**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Yvonne N. AJUGWO, Defendant–
Appellant.**

No. 95–50178.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 7, 1996.

Decided May 7, 1996.

Thomas R. Freeman and Sharon E. Jones, Bird, Marella, Boxer, Wolpert & Matz, Los Angeles, California, for defendant-appellant.

Rob B. Villeza, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee.

Before WALLACE and T.G. NELSON, Circuit Judges, and BROWNING,* District Judge.

T.G. NELSON, Circuit Judge:

OVERVIEW

Yvonne Ajugwo appeals her sentence imposed following her guilty plea to conspiracy

---

* Honorable William D. Browning, United States District Judge for the District of Arizona, sitting by designation.

to import heroin in violation of 21 U.S.C. § 963 on the grounds that the Government breached the plea agreement when it contested the applicability of U.S.S.G. § 5C1.2(5), the safety valve provision. We have jurisdiction under 18 U.S.C. § 3742(a), and we affirm.

## SAFETY VALVE PROVISION

Before we go into the facts and history of this case, we will discuss the Mandatory Minimum Sentencing Reform Act ("MMSRA"), 18 U.S.C. § 3553(f), also known as the "safety valve" provision. Section 3553(f) appears in the sentencing guidelines at § 5C1.2.

Until Congress passed the MMSRA, defendants convicted of certain drug crimes could receive a sentence below the statutory minimum only on the Government's motion to depart downward based on a defendant's substantial assistance to the authorities. *See* 18 U.S.C. § 3553(e). Congress enacted § 3553(f) to rectify an inequity in this system, whereby more culpable defendants who could provide the Government with new or useful information about drug sources fared better under § 3553(e) than lower-level offenders, such as mules, who typically have less knowledge. *See United States v. Arrington*, 73 F.3d 144, 146 (7th Cir.1996); *United States v. Acosta–Olivas*, 71 F.3d 375, 378 (10th Cir.1995). As the legislative history to the MMSRA states: "Ironically, [ ] for the very offenders who most warrant proportionally lower sentences-offenders that by guideline definitions are the least culpable-mandatory minimums generally operate to block the sentence from reflecting mitigating factors." H.R.Rep. No. 103–460, 103d Cong., 2d Sess., 1994 WL 107571 (1994).

Section 3553(f) allows the sentencing court to disregard the statutory minimum in sentencing first-time nonviolent drug offenders who played a minor role in the offense and who "have made a good-faith effort to cooperate with the government." *Arrington*, 73 F.3d at 147. Specifically, § 3553(f) provides that a court must impose a sentence pursuant to the guidelines without regard to the statutory mandatory minimum if the court finds that the defendant meets the following five criteria:

(1) defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

## FACTS AND PROCEDURAL HISTORY

In October 1993, Ajugwo asked co-defendants, Jessie Omine and Tracey Michelle Turner, to transport an unspecified amount of heroin from Seoul, Korea, to Los Angeles, California. According to Ajugwo's instructions, Turner and Omine were to deliver the heroin to Ajugwo in Los Angeles in exchange for $10,000. Ajugwo provided to Omine and Turner the funds necessary for the trip.

In November 1993, Omine and Turner flew to Korea and picked up the heroin. Upon returning to the United States with the heroin on December 4, 1993, Turner and Omine were arrested. Turner and Omine then agreed to deliver the heroin to Ajugwo at a Los Angeles restaurant under the supervision of law enforcement agents. On December 6, 1993, when Ajugwo met Turner and Omine to pick up the heroin, she was arrested and taken into custody.

On February 11, 1994, a federal grand jury returned a three-count indictment charging Ajugwo, Turner, and Omine with conspiracy to import heroin (21 U.S.C. § 963); importation of heroin (21 U.S.C. § 952(a)(2)); and possession with intent to distribute heroin (21 U.S.C. § 841(a)(1)).

On April 15, 1995, a federal grand jury returned a first superseding indictment charging Ajugwo and co-defendants Turner, Omine, and Barry Owens Williams with conspiracy to import heroin (21 U.S.C. § 963) and conspiracy to possess with intent to distribute heroin (21 U.S.C. § 846). Ajugwo was charged with a separate count of possession with intent to distribute heroin (21 U.S.C. § 841(a)(1)).

Ajugwo entered into an agreement to meet with the Government. According to the written proffer agreement, the Government promised not to offer Ajugwo's proffer statements in its case-in-chief, or in connection with any sentencing proceeding, on the condition that Ajugwo agreed to respond truthfully and completely to all questions asked at the proffer meeting. If, however, the Government ever concluded that Ajugwo was less than truthful or otherwise knowingly withheld material information, under the terms of the agreement, the Government, upon giving Ajugwo notice, could use Ajugwo's statements against her for any purpose.

According to the Government, in the proffer meeting held on March 9, 1994, Ajugwo denied any knowledge of prior narcotics transactions and did not provide facts concerning the arrangements she made with the heroin source or her instructions to Turner while Turner was in East Asia. However, in proffer meetings with the other defendants, the Government learned that Ajugwo was more extensively involved in the November–December heroin transaction than she had indicated in her March 9, 1994, proffer meeting. The Government also learned of several other drug transactions in which Ajugwo had been involved. Thus, the Government concluded that Ajugwo withheld information during the March 9 meeting.

On September 13, 1994, Ajugwo signed a plea agreement in which she agreed to plead guilty to count one of the first superseding indictment, violation of 21 U.S.C. § 963, for which a mandatory minimum ten-year sentence applies. In exchange for Ajugwo's plea, the Government agreed to recommend a three-level reduction for acceptance of responsibility. The parties also agreed that pursuant to sentencing guideline § 2D1.1, the base offense level for the pending offense was 32. In paragraph seven of the plea agreement, the parties agreed that the Government would not "affirmatively seek, [or] take a position, on a sentence enhancement for [Ajugwo's] role in the offense under U.S.S.G. § 3B1.1, subject to the provision set forth in the paragraph below." The paragraph to which the parties were referring states in part:

> [T]he government reserves the right to argue at sentencing that § 5C1.2 is inapplicable based on the criteria set forth therein, including the right to argue that defendant had an aggravating role as defined in § 5C1.2(4), notwithstanding its agreement not to seek the sentence enhancement under § 3B1.1 as set forth above.

During the sentencing process, Ajugwo argued that she qualified for the safety valve provision because she had satisfied each of the five criteria set forth in § 5C1.2. The effect of the safety valve provision would be a sentence below the mandatory minimum ten-year sentence. Ajugwo further argued that as part of the plea discussions, the Government had verbally waived its right to challenge the applicability of § 5C1.2 on the basis of the fifth element.

In opposition to Ajugwo's request for application of the safety valve provision, the Government argued that it had expressly reserved its right in the plea agreement to argue that § 5C1.2 was inapplicable and to submit to the court additional, pertinent information regarding Ajugwo's criminal conduct. The Government also contended that it did not verbally waive its right to argue that § 5C1.2 was inapplicable.

Without expressly ruling on the issue of whether the Government breached the plea agreement, the district court found, based on the corroborating evidence, that Ajugwo was not forthcoming and not entirely candid with

regard to her role in the drug transactions. Therefore, holding that Ajugwo failed to meet her burden of establishing that she qualified for the safety valve provision, the court imposed the mandatory minimum sentence of ten years.

## DISCUSSION

### I. Plea Agreement

The district court's interpretation and construction of a plea agreement is reviewed for clear error. *United States v. Floyd*, 1 F.3d 867, 869 (9th Cir.1993). Factual findings regarding the terms of the plea agreement are also subject to the clearly erroneous standard of review. *United States v. Sharp*, 941 F.2d 811, 816 (9th Cir.1991).

Ajugwo argues that as part of the plea agreement, the Government verbally promised not to oppose application of the safety valve provision on the ground that Ajugwo failed to satisfy the fifth prong of the safety valve provision, and the Government breached that promise. In response, the Government argues: (1) that it did not breach the plea agreement because under the terms of the written plea agreement, the Government specifically reserved its right to contest the applicability of each criterion of the safety valve provision set forth in § 5C1.2; and (2) that the Government did not verbally promise not to contest the applicability of § 5C1.2(5).

"A plea agreement is contractual in nature and is subject to contract law standards." *Floyd*, 1 F.3d at 870. "It is a fundamental rule of contract law that the terms of a clear and unambiguous written contract cannot be changed by parol evidence." *United States v. Gamble*, 917 F.2d 1280, 1282 (10th Cir. 1990).

■ Paragraph seven of the written plea agreement in the instant case states:

In the event that U.S.S.G. § 5C1.2 is in effect at the time of sentencing, the government reserves the right to argue at sentencing that § 5C1.2 is inapplicable based on the criteria set forth therein, including the right to argue that defendant had an aggravating role as defined in § 5C1.2(4), notwithstanding its agreement

not to seek the sentence enhancement under § 3B1.1 as set forth above.

On its face, the language of the plea agreement is not ambiguous.

Ajugwo urges this court to apply a relaxed standard for determining ambiguity. Ajugwo points to *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir.1986) (the defendant's underlying "contract" right is constitutionally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law), *Kingsley v. United States*, 968 F.2d 109, 112 (1st Cir.1992) (holding that the language of the plea agreement was inconsistent), and *United States v. Garcia*, 956 F.2d 41 (4th Cir.1992) (determining that the fact the Government prepared the cover letter and the plea agreement indicated that the inclusion of a promise in the letter and the omission of that promise in the plea agreement "could only be due to governmental overreaching, inadvertent omission, the dereliction of defense counsel, or some combination of those factors"), in support of her argument to consider extrinsic evidence.

We decline to examine cases from other circuits given that there is binding precedent in this circuit. In *United States v. Pacheco–Osuna*, 23 F.3d 269, 271 (9th Cir.1994), we refused "to consider parol evidence for the purpose of adding terms to or changing the terms of an integrated plea agreement." *Id.* We further held that there was no reason to consider the parol evidence because the defendant's " 'evidence' consist[ed] solely of representations by his attorney that there was an agreement to a 21–month sentence, but opposing counsel adamantly represented to the court that the contrary was true." *Id.*

In the case at hand, it is clear from the language of paragraph seven of the plea agreement that the general reference to § 5C1.2 was followed by the specific inclusion of § 5C1.2(4) only because it was necessary in light of the Government's agreement not to seek an upward departure for aggravated role offense under U.S.S.G. § 3B1.1. The term "including," followed by a reference to § 5C1.2(4), should not be read to limit the Government's right to contest sections other

than § 5C1.2(4). *See Federal Land Bank v. Bismarck Lumber Co.,* 314 U.S. 95, 99–100, 62 S.Ct. 1, 3–4, 86 L.Ed. 65 (1941) (the term "including" is not an "all embracing" term). Further, paragraph fourteen of the plea agreement states:

> Except as expressly set forth herein, there are no additional promises, understandings or agreements between the government and you or your counsel concerning any other criminal prosecution, civil litigation or administrative proceeding relating to any other federal, state or local charges that may now be pending or hereafter be brought against you, or the sentence that might be imposed as a result of your guilty plea pursuant to this Agreement. *Nor may any additional agreement, understanding or condition be entered into unless in writing and signed by all parties.*

(Emphasis added).

Because the language of the plea agreement is unambiguous and completely integrated, we reject the defendant's argument that the plea agreement has been breached.

**II. Qualification for the Safety Valve Provision**

■ The district court's interpretation and application of the sentencing guidelines are reviewed *de novo. United States v. Blaize,* 959 F.2d 850, 851 (9th Cir.), *cert. denied,* 504 U.S. 978, 112 S.Ct. 2954, 119 L.Ed.2d 576 (1992). "Factual findings made by the district court are reviewed for clear error." *Id.* "[T]he determination of the sentencing judge is entitled to great deference and should not be disturbed on review unless without foundation." *United States v. Innie,* 7 F.3d 840, 848 (9th Cir.1993) (in context of applying U.S.S.G. § 3E1.1 regarding acceptance of responsibility), *cert. denied,* —— U.S. ——, 114 S.Ct. 1567, 128 L.Ed.2d 212 (1994).

The district court found that Ajugwo had not been as forthcoming as she could have been and therefore failed to meet her burden of establishing that she qualified for the safety valve provision. Ajugwo argues that the court's finding was erroneous because it was necessarily based upon her proffered statements, which, according to Ajugwo, were improperly before the court. Ajugwo argues that "the district court should not have known what [she] told the government and could not therefore have properly found that proffered information to be untrue or otherwise lacking." Ajugwo's argument is not persuasive.

■ Although there is no legislative comment or circuit authority addressing the burden of proof under § 5C1.2, we have placed the burden on the defendant to prove by a preponderance of the evidence that she should receive a sentence reduction under the guidelines based upon some mitigating factor. *United States v. Barnes,* 993 F.2d 680, 683 (9th Cir.1993) (placing the burden of proof at sentencing on the party seeking to adjust the offense level), *cert. denied,* —— U.S. ——, 115 S.Ct. 96, 130 L.Ed.2d 46 (1994); *United States v. Uzelac,* 921 F.2d 204, 205 (9th Cir.1990) (holding that defendant seeking reduced sentence has burden to prove the mitigating factor in § 2K2.1(b)(1)); *see also, Arrington,* 73 F.3d at 148 ("Thus, to qualify for relief under § 3553(f) [§ 5C1.2], a defendant must demonstrate to the court that he has made a good faith attempt to cooperate with the authorities.").

■ Ajugwo had the burden of proving, by a preponderance of the evidence, that she qualified for the safety valve provision. In her December 7, 1994, sentencing memorandum, Ajugwo asserted that she had provided the Government with complete, truthful information. However, her bare assertion that she had provided all relevant information to the Government because she "had at least two meetings with the government," is hardly a preponderance of the evidence. In determining whether Ajugwo had been truthful and completely forthcoming with information concerning the offense, the district court could consider information learned from other sources which indicated that Ajugwo had been less than forthcoming.

■ Next, Ajugwo argues that the Government bears the burden of proving the justification for a mandatory minimum sentence in excess of that required by the sentencing guidelines. Ajugwo pled guilty to count one of the superseding indictment which was the violation of 21 U.S.C.

§ 963(a)(2). The violation of 21 U.S.C. § 963(a)(2) carries with it a mandatory minimum sentence of ten years. Because Ajugwo was the party seeking the downward departure from the mandatory minimum sentence under the safety valve provision, she had the burden of proving that she met each of the five criteria.

In light of the circumstances, the district court's determination that Ajugwo failed to show that she met each of the five criteria was proper.

## CONCLUSION

For the reasons stated above, the judgment and sentence are AFFIRMED.