**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

SETH MUTH,
    *Petitioner-Appellant,*

v.

DWIGHT L. FONDREN, Warden,
Sandstone F.C.I.,
    *Respondent-Appellee.*

No. 10-35223

D.C. No.
1:09-cv-00118-JDS

ORDER AND
AMENDED
ORDER

Appeal from the United States District Court
for the District of Montana
Jack D. Shanstrom, Senior District Judge, Presiding

Argued and Submitted
January 10, 2012—Seattle, Washington

Filed April 3, 2012
Amended May 31, 2012

Before: Susan P. Graber, Raymond C. Fisher, and
Johnnie B. Rawlinson, Circuit Judges.

---

## COUNSEL

David F. Ness, Assistant Federal Defender, Federal Defenders
of Montana, Great Falls, Montana, for the petitioner-
appellant.

J. Bishop Grewell, Assistant United States Attorney, Helena,
Montana, for the respondent-appellee.

## ORDER

Appellant's motion to amend the published order filed on April 3, 2012, is GRANTED.

On slip opinion page 3601, line 18, delete "under oath".

On slip opinion page 3604, line 2, delete "under oath"; on line 9, delete "sworn"; on line 28, change "sworn" to "in-court".

On slip opinion page 3605, line 22, delete "sworn"; on line 36, delete "sworn".

---

## ORDER

GRABER, Circuit Judge:

Petitioner Seth Muth appeals an order denying his request for post-conviction relief and declining to grant him a certificate of appealability ("COA"). Because no reasonable jurist would conclude that Petitioner has demonstrated actual innocence, we decline to issue a COA and we affirm the judgment of the district court.

In 2003, Petitioner pleaded guilty to using a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A). The district court for the District of Montana sentenced Petitioner to a five-year term for possession of methamphetamine with intent to distribute, plus a consecutive ten-year term for using a firearm in relation to an uncharged drug trafficking offense. Petitioner was initially incarcerated in Minnesota.

On December 10, 2007, the Supreme Court decided *Watson v. United States*, 552 U.S. 74 (2007). *Watson* abrogated our

holding in *United States v. Ramirez-Rangel*, 103 F.3d 1501, 1506 (9th Cir. 1997), that a person who *receives* a firearm in trade for drugs "uses" the firearm for the purposes of § 924(c)(1)(A). Under *Watson*, "a person does *not* 'use' a firearm under § 924(c)(1)(A) when he *receives* it in trade for drugs." *Watson*, 552 U.S. at 83 (emphases added). *Watson* left undisturbed the Supreme Court's holding that one who *supplies* a firearm in exchange for drugs "uses" the firearm for the purposes of § 924(c). *Id.*; *Smith v. United States*, 508 U.S. 223 (1993).

More than a year after the Supreme Court issued the *Watson* decision, Petitioner filed a petition for a writ of habeas corpus in the district court for the District of Minnesota, where he was then incarcerated. *See Stephens v. Herrera*, 464 F.3d 895, 897 (9th Cir. 2006) ("[A] § 2241 petition must be filed in the district where the petitioner is in custody."). Petitioner relied on 28 U.S.C. § 2241. He argued that *Watson* rendered him "actually innocent" of violating § 924(c) and that he was therefore eligible for relief under the "escape hatch" of 28 U.S.C. § 2255.[1]

The Minnesota district court concluded that Petitioner's filing was not properly brought under § 2241 and construed it as a disguised § 2255 motion. Recognizing that jurisdiction over § 2255 motions lies with the sentencing court, not the custodial district, *Stephens*, 464 F.3d at 897, the Minnesota district court transferred the case to the District of Montana.

---

[1]The "escape hatch" of § 2255 provides:

"An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."

28 U.S.C. § 2255(e).

The Montana district court then processed the § 2255 motion. The court determined that Petitioner was not actually innocent, dismissed the motion on the merits, and declined to grant Petitioner's request for a COA.

Petitioner timely appeals, arguing that his petition was properly brought under § 2241 and should be granted. We review de novo. *Ivy v. Pontesso*, 328 F.3d 1057, 1059 (9th Cir. 2003).

## A.   *Habeas Petitions Under the Escape Hatch of § 2255*

A motion under § 2255 is generally the exclusive remedy for a federal prisoner who seeks to challenge the legality of confinement. *See Stephens*, 464 F.3d at 897 ("The general rule is that a motion under 28 U.S.C. § 2255 is the exclusive means by which a federal prisoner may test the legality of his detention, and that restrictions on the availability of a § 2255 motion cannot be avoided through a petition under 28 U.S.C. § 2241." (citation omitted)). "The one exception to the general rule is what we have called the 'escape hatch' of § 2255." *Id.* This lone exception permits a federal prisoner to file a § 2241 petition if his remedy under § 2255 is "inadequate or ineffective to test the legality of his detention." *Id.* (internal quotation marks omitted).

Whether a petition is properly brought under § 2255 or § 2241 has two important implications. First, a petitioner who wishes to appeal the dismissal of a § 2255 motion must obtain a COA before doing so. 28 U.S.C. § 2253(c)(1). There is no such requirement for appeals involving habeas corpus petitions properly filed under § 2241. *See Alaimalo v. United States*, 645 F.3d 1042, 1047 (9th Cir. 2011) ("Where a petition purportedly brought under § 2241 is merely a 'disguised' § 2255 motion, the petitioner cannot appeal the denial of that petition absent a COA; a valid § 2241 petition, however, *must* be considered, even absent a COA."); *Harrison v. Ollison*, 519 F.3d 952, 958 (9th Cir. 2008) ("The plain language of

§ 2253(c)(1) does not require a petitioner to obtain a COA in order to appeal the denial of a § 2241 petition."). Second, § 2241 petitions must be filed in the district where the petitioner is confined, while § 2255 motions must be filed in the district where the petitioner was sentenced. *Stephens*, 464 F.3d at 897.

Before proceeding to the merits of a § 2241 petition ostensibly brought pursuant to the "escape hatch" of § 2255, a district court must resolve the threshold question whether a petition was properly brought under § 2241 or whether the filing should instead be construed as a § 2255 motion. *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (per curiam). This determination ensures that the petitioner will not be "deprived . . . of a ruling on the merits of his claim that § 2255 was an 'inadequate or ineffective' remedy." *Id.* at 866. If the district court construes the filing as a § 2255 motion and concludes that it therefore lacks jurisdiction, it may transfer the case to the appropriate district.[2] *Id.* at 864-65; *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990).

Under the law of the case doctrine, the transferee court should not revisit the transferor court's characterization of the petition unless that characterization was "clearly erroneous" or would result in "manifest injustice." *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816-17 & n.5 (1988) ("Indeed, the policies supporting the doctrine apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation. . . . There is no reason to apply law-of-the-case principles less rigorously to transfer decisions that implicate the transferee's jurisdiction. Perpetual litigation of any issue—jurisdictional or

---

[2]Of course, if the custodial court and the sentencing court are in the same district, there is no need to transfer the case; the court may simply resolve the § 2255 motion.

nonjurisdictional—delays, and therefore threatens to deny, justice." (citations omitted)). Thus, although *Hernandez* dictates that *some* district court must address the threshold issue whether a petition was properly brought under § 2241, it does not require *both* the transferor court *and* the transferee court to conduct a full analysis.[3] Such a requirement would engender redundant analysis and could result in a case bouncing back and forth if the two districts disagree on the characterization of the filing. *See, e.g., id.* (recognizing the risk of perpetual litigation where both the transferor court and the transferee court revisit the jurisdictional determination).

Here, the Minnesota district court conducted a thorough analysis, held that the petition could not be brought under the escape hatch, and construed the filing as a § 2255 motion. Concluding that, as the custodial court, it lacked jurisdiction to hear Petitioner's § 2255 petition, the Minnesota court transferred the case to the sentencing court in Montana. Because the Minnesota district court conducted the analysis required by *Hernandez*, the Montana court was free to proceed directly to the merits.

B.   *Petitioner's Claim is Not a Legitimate § 2241 Petition*

We have held that "a § 2241 petition is available under the 'escape hatch' of § 2255 when a petitioner (1) makes a claim of actual innocence, and (2) has not had an 'unobstructed procedural shot' at presenting that claim." *Stephens*, 464 F.3d at 898. Thus, for Petitioner's claim to be a legitimate § 2241 petition, he must satisfy both of those requirements. He cannot, because he has not plausibly shown actual innocence.

---

[3]If, however, the transferor court failed to conduct the appropriate analysis before transferring the case, the transferee district court must do so. *See Hernandez*, 204 F.3d at 866 (holding that, where the transferor court had failed to address the issue, the transferee district court erred by not resolving the jurisdictional question before proceeding to the merits).

Petitioner claims that the *Watson* decision rendered him "actually innocent" of violating § 924(c) because his conduct did not involve "us[ing]" a firearm in relation to a drug trafficking crime. 18 U.S.C. § 924(c)(1)(A). "In this circuit, a claim of actual innocence for purposes of the escape hatch of § 2255 is tested by the standard articulated by the Supreme Court in *Bousley v. United States*, 523 U.S. 614[, 623] (1998): 'To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.' " *Stephens*, 464 F.3d at 898. " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623.

Under *Watson*, a person who *receives* a firearm in a drugs-for-firearms trade does not "use" the firearm for the purposes of § 924(c). *Watson*, 552 U.S. at 83. But, under *Smith*, a person who *supplies* a firearm in a drugs-for-firearms trade does indeed "use" the firearm for the purposes of § 924(c). *Smith*, 508 U.S. at 228-29. The question, then, is whether Petitioner's conduct falls under *Watson* or *Smith*.

Both parties agree that the factual basis underlying the § 924(c) plea was a trade between Petitioner and Joseph Michael involving 1.5 grams of methamphetamine and a Norinco SKS semi-automatic assault weapon. The parties now dispute, however, which way the trade went—in other words, Petitioner now claims that he was convicted of having supplied Michael with 1.5 grams of methamphetamine and having received the firearm as payment. That is the situation addressed in *Watson*. The government contends that the trade went the other way—Petitioner supplied Michael with the firearm and received 1.5 grams of methamphetamine. In those circumstances, *Smith* would apply.

Three parts of the record shed light on the direction of the trade: the indictment, the plea agreement, and Petitioner's

own statements at the plea colloquy. The indictment contains three counts:

### COUNT I

That in on or about April 2001, at Glendive and Billings, in the State and District of Montana, the defendant, SETH MUTH, did knowingly, intentionally, and unlawfully possess with intent to distribute over 50 grams of a mixture containing methamphetamine, a Schedule II controlled substance, in that, the defendant, SETH MUTH, picked up methamphetamine in Billings, Montana, and delivered it to Thomas Jones in Glendive, Montana, in violation of 21 U.S.C. § 841(a)(1).

### COUNT II

That in on or about July 24, 2001, at Glendive, in the State and District of Montana, the defendant, SETH MUTH, did knowingly, intentionally, and unlawfully distribute, and did aid the distribution of, approximately 1.5 grams of a mixture containing methamphetamine, a Schedule II controlled substance, to Joseph Michael, in violation of 21 U.S.C. § 841(a)(1).

### COUNT III

On or about July 24, 2001, at Glendive, in the State and District of Montana, the defendant, SETH MUTH, knowingly and unlawfully used or carried a firearm, that is, a Norinco SKS semi-automatic assault weapon, serial number 24000003, during and in relation to a drug trafficking crime, namely, distribution of a mixture containing methamphetamine, a Schedule II controlled substance, as set forth in 21 U.S.C. § 841(a)(1) and as charged in Count II, in

> that, *the defendant, SETH MUTH, exchanged the Norinco firearm for approximately 1.5 grams of methamphetamine, in violation of 18 U.S.C. § 924(c)(1).*

(Emphasis added.) Petitioner pleaded guilty to Counts I and III, and the government dropped Count II.

Petitioner argues that, because Count III explicitly references Count II, Count III necessarily incorporates the factual allegations contained in Count II. According to Petitioner, Count II alleges that he gave the methamphetamine to Michael and thereby suggests that he must have received the firearm in trade. Petitioner therefore concludes that, by pleading guilty to Count III, he was convicted only of *receiving* the firearm and supplying the methamphetamine.

Petitioner's argument is belied by the text of Count III: "SETH MUTH, exchanged the Norinco firearm *for* approximately 1.5 grams of methamphetamine, in violation of 18 U.S.C. § 924(c)(1)." (Emphasis added.)[4] Count III references Count II only to define the "drug trafficking" crime in relation to which the firearm was used: "distribution of a mixture containing methamphetamine, a Schedule II controlled substance, as set forth in 21 U.S.C. § 841(a)(1) and as charged in Count II." Count III, to which Petitioner pleaded guilty, unambiguously alleges that Petitioner *supplied* the firearm and received the methamphetamine in exchange.

The written plea agreement, on the other hand, states that

---

[4]Interpreting Counts II and III of the indictment to provide contradictory factual accounts poses no threat to the validity of the indictment or the conviction on one of the counts. Indeed, prosecutors are allowed to indict in the alternative, and Petitioner was convicted only of Count III. *See Douglas v. Long*, 661 F.2d 747, 749 (9th Cir. 1981) (per curiam) (holding that a defendant may be indicted for inconsistent crimes, although he cannot be convicted of them).

Petitioner *received* the firearm and in turn supplied Michael with methamphetamine:

> Defendant Muth acknowledges that on or about July 24, 2001, he distributed approximately 1.5 grams of methamphetamine to Joe Michael and in exchange, Joe Michael gave him a Norinco SKS semi-automatic assault weapon, serial number 24000003. Although the distribution of 1.5 grams of methamphetamine from Muth to Michael is not formally charged, it is a separate underlying federal criminal drug felony.

The indictment and the plea agreement thus offer contradictory accounts of the direction of the trade. The indictment unambiguously alleges that Petitioner *supplied* the firearm, while the plea agreement clearly states that Petitioner *received* the firearm.

At the plea colloquy, Petitioner resolved this factual inconsistency in favor of the crime as alleged in Count III, and he disavowed the mistake in the plea agreement. During the change of plea hearing, Petitioner testified: "It says here that I distributed approximately 1.5 grams of methamphetamine to Joe Michael. In exchange, Joe Michael gave me a Norinco SKS assault rifle. The facts are actually that Joe Michael delivered the methamphetamine to me in exchange for the rifle. I delivered the rifle to him." Petitioner's lawyer also confirmed this version of events.

Petitioner's statements at the plea colloquy carry a strong presumption of truth. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("[T]he representations of the defendant [at a plea hearing] . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); *United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008) ("Statements made by a defendant during a guilty plea hearing carry a strong pre-

sumption of veracity in subsequent proceedings attacking the plea."); *United States v. Morrison*, 113 F.3d 1020, 1021 (9th Cir. 1997) ("Any attempt to contradict the factual basis of a valid plea must fail."); *United States v. Anderson*, 993 F.2d 1435, 1438 (9th Cir. 1993) ("Statements made by a criminal defendant contemporaneously with his plea should be accorded great weight because solemn declarations made in open court carry a strong presumption of verity." (internal quotation marks and brackets omitted)).

Other circuits have confronted the question whether a petitioner may rest a collateral challenge on allegations that directly contradict the petitioner's in-court statements and have held that, ordinarily, such petitions must fail. *See United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) ("Judges need not let litigants contradict themselves so readily; a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction."); *United States v. Lemaster*, 403 F.3d 216, 220-21 (4th Cir. 2005) ("When deciding whether an evidentiary hearing is necessary to resolve a § 2255 motion contesting a guilty plea, first a court must determine whether the petitioner's allegations, when viewed against the record of the Rule 11 plea hearing, were so palpably incredible, so patently frivolous or false as to warrant summary dismissal. . . . [I]n the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." (citations and internal quotation marks omitted)); *Lasiter v. Thomas*, 89 F.3d 699, 703 (10th Cir. 1996) ("[The petitioner] [i]s bound by his solemn declarations in open court and his unsubstantiated efforts to refute that record [a]re not sufficient to require a hearing. This case does not involve the most extraordinary circumstances." (internal quotation marks omitted)); *Ouellette v. United States*, 862 F.2d 371, 377-78 (1st Cir. 1988) (holding that an evidentiary hearing is not

required when a petitioner's uncorroborated allegations are directly contradicted by his testimony at the plea colloquy). We agree with those general principles.

Here, Petitioner offers no explanation for the contradiction between his statements at the plea colloquy and his current claim that he received the firearm, rather than supplied it. Instead, Petitioner asserts that the indictment was ambiguous and that the written plea agreement governs. He asks us to ignore the fact that he himself declared the plea agreement factually erroneous and corrected it in open court. Indeed, Petitioner does not appear to affirmatively allege that he *actually received* the firearm in the trade; he simply claims that he was *convicted of receiving* the firearm. But a claim of actual innocence requires that the petitioner show factual innocence —mere legal insufficiency is not enough. *Bousley*, 523 U.S. at 623. That deficiency alone could sink Petitioner's actual innocence claim. Even if it does not, the indictment unambiguously alleged that Petitioner supplied the firearm, and Petitioner is bound by his admission that he did so.

Because Petitioner *supplied* the firearm and received the methamphetamine, his conduct is not covered by the Supreme Court's decision in *Watson*. Instead, Petitioner's conduct falls squarely within the purview of *Smith*, which dictates that a person who *supplies* a firearm in return for drugs "uses" the firearm for the purposes of § 924(c). Thus, Petitioner was convicted of engaging in conduct that remains criminal, and he is not actually innocent.

## C.   *Certificate of Appealability*

Because Petitioner's filing was properly construed as a § 2255 motion, a COA is required. 28 U.S.C. § 2253(c)(1)(B). The district court and we both have the authority to issue a COA. *Id.* § 2253(c)(1); *Valerio v. Crawford*, 306 F.3d 742, 763 (9th Cir. 2002) (en banc). The district court denied Petitioner's request for a COA, so Petitioner must obtain one

from this court before he can proceed with his appeal. 28 U.S.C. § 2253(c)(1). We decline to grant a COA.

In order to obtain a COA, Petitioner must make "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To do so, Petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; *or* that the questions are adequate to deserve encouragement to proceed further." *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) (internal quotation marks and brackets omitted). Petitioner need not demonstrate that his appeal will prevail. *See id.* at 1025 n.4 ("[T]he showing a petitioner must make to be heard on appeal is less than that to obtain relief."); *Wilson v. Belleque*, 554 F.3d 816, 826 (9th Cir. 2009) ("[T]he Supreme Court has made clear that the standard for obtaining a COA is not a particularly exacting one.").

Because we have concluded that Petitioner plainly is not actually innocent, his § 2255 petition presents no issues that are "debatable among jurists of reason" or "adequate to deserve encouragement to proceed further." We therefore decline to issue a COA.

Certificate of Appealability DENIED. Appeal DISMISSED.