**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee*,

v.

TONY J. JACKSON,
　　　　　　*Defendant-Appellant*.

No. 20-35592

D.C. Nos.
3:18-cv-05657-BHS
3:14-cr-05242-RJB-2

OPINION

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted October 8, 2021
Seattle, Washington

Filed January 3, 2022

Before: Richard A. Paez, Milan D. Smith, Jr., and
Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Nguyen

## SUMMARY[*]

### 28 U.S.C. § 2255

The panel affirmed in part and reversed in part the district court's order denying Tony Junior Jackson's 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence imposed following his plea, pursuant to a written plea agreement, of guilty to one count of conspiracy to engage in sex trafficking.

The panel held that Jackson's notice of appeal was valid and timely because his two requests for a certificate of appealability, received before the deadline set forth in Federal Rule of Appellate Procedure 4(a)(1)(B), made clear his intention to appeal the district court's order.

The panel held that Jackson's § 2255 motion was not an improper "second or successive" motion under 28 U.S.C. § 2244(b) because the factual circumstances underlying the motion did not occur until after an earlier § 2255 motion had been resolved.

The panel affirmed the district court's denial of Jackson's claim that the government breached the plea agreement because, in addition to the written plea agreement, in which the government promised to recommend a Sentencing Guidelines range of 120–180 months in prison, Jackson also relied on the government's oral promise that it would not offer his codefendant a lesser

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

sentence. The panel held that the record was not sufficient to overcome the presumption that Jackson's written plea agreement and his sworn statements during the plea colloquy described the complete agreement reached between the parties. The panel further held that Jackson's claim was barred by a collateral attack waiver. Under the terms of the plea agreement, Jackson waived his right to collaterally attack his sentence other than to challenge the effectiveness of counsel. The panel held that, because the government did not breach the plea agreement, the waiver was valid.

Reversing in part, the panel held that the district court abused its discretion by failing to consider Jackson's pro se letter as a request to amend his § 2255 motion to add a claim of ineffective assistance of trial counsel based on counsel's failure to ensure that the government's oral promise was made a part of the record. The panel remanded for the district court to consider the merits of the ineffective assistance claim in the first instance.

**COUNSEL**

Lila J. Silverstein (argued), Washington Appellate Project, Seattle, Washington, for Defendant-Appellant.

Teal Luthy Miller (argued) and Ye-Ting Woo, Assistant United States Attorneys; Tessa M. Gorman, Acting United States Attorney, Western District of Washington; United States Attorney's Office, Seattle, Washington; for Plaintiff-Appellee.

**OPINION**

NGUYEN, Circuit Judge:

Tony Junior Jackson appeals from the district court's order denying his 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence. Pursuant to a written plea agreement, Jackson pleaded guilty to one count of conspiracy to engage in sex trafficking in exchange for the government's promise to recommend a Sentencing Guidelines range of 120–180 months in prison. Despite assuring the district court during the plea colloquy that there was no "side agreement," Jackson now contends that, in addition to the written plea agreement, he also relied on the government's oral promise that it would not offer his co-defendant, James Young, a lesser sentence. Jackson argues that the government breached the plea agreement when it later offered Young a sentence of 90 months in prison. Jackson also asserts a claim of ineffective assistance of counsel based on his trial counsel's failure to ensure that the government's oral promise was made a part of the record. The district court denied Jackson's § 2255 motion.

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. As a preliminary matter, we find that the district court had jurisdiction over Jackson's § 2255 motion, and the notice of appeal to our court was timely. We affirm in part the district court's denial of Jackson's § 2255 motion on the merits, and reverse and remand in part for the district court to consider Jackson's ineffective assistance of counsel claim in the first instance.

I

A

Jackson pleaded guilty to one count of conspiracy to engage in sex trafficking by force, fraud, and coercion in November 2015, pursuant to a written plea agreement with the government.

The plea agreement was fully integrated. It specified that the written document represented "the entire Plea Agreement between the parties," confirmed that Jackson entered the agreement "freely and voluntarily," and disclaimed the existence of any other agreements: "[N]o threats or promises, other than the promises contained in this Plea Agreement, were made to induce Defendant to enter his plea of guilty." Jackson agreed to waive his right to appeal or collaterally attack his conviction and sentence, except to challenge the effectiveness of his counsel. The government agreed to recommend a 120- to 180-month prison sentence, dismiss Jackson's remaining charges, and not to prosecute Jackson for sex trafficking in other federal districts based on evidence in its possession at the time.

During the Federal Rule of Criminal Procedure 11 plea colloquy, the court confirmed Jackson's understanding of the written plea agreement[1] and asked whether the government made any other promises:

> **The Court:** And do these agreements represent in their entirety any understanding

---

[1] Jackson entered guilty pleas in two cases under two plea agreements, but only one is at issue here.

or agreement that you have with the government?

**The Defendant:** Yes.

**The Court:** There are no side agreements or anything that is not written down here?

**The Defendant:** No, there isn't, Your Honor.

**The Court:** And you feel you understand the terms of these agreements?

**The Defendant:** I do.

**The Court:** And has anyone made any other or different promises or assurances to you of any kind to get you to plead guilty, other than what's in these plea agreements?

**The Defendant:** No, sir.

…

**The Court:** You also indicated here that entering into this plea agreement or these agreements are voluntary, no one has put any pressure on you to do it except the situation you find yourself in; is that correct?

**The Defendant:** Yes, sir.

**The Court:** And you've got the whole agreement here in these two documents?

**The Defendant:** Yes, I do.

Jackson confirmed that he understood the appeal waiver. The court accepted Jackson's guilty plea and later sentenced him to 140 months in prison with five years of supervised release.

Now, in his § 2255 motion, Jackson claims that, in entering a guilty plea, he relied on an off-the-record promise made by the government. Immediately before the plea hearing, Jackson's attorney asked the government whether his co-defendant Young would receive a better sentence offer. Jackson and Young were both named in the same indictment and charged with one count of conspiracy to commit sex trafficking, among other offenses.

The government does not dispute that a conversation took place but disputes the exact substance of its response. According to Jackson, when asked whether Young would receive a lower sentence offer, the prosecutor promised "that would not happen" and said: "I promise your co-defendant is not going to get a better agreement, he's going to get the same agreement and the same amount of time if not more." Jackson's attorney at the time, Charles Johnston, also maintains that the government "verbally promised Mr. Jackson that, that was not going to happen and that Mr. Young would not get a better offer but the same offer of time if not more."[2] The government concedes it represented that it did not *intend* to offer Young a lower sentence, but that

_____

[2] Young's lawyer, Terrence Kellogg, was not present during this conversation, but in his declaration states that "to the best of my recollection, [the prosecutor] Mr. Miyake told me that the government had advised Mr. Jackson that they, the government, would not extend a more favorable offer to Mr. Young than the offer received by Mr. Jackson."

this verbal representation was not a part of the plea agreement. The prosecutor, Bruce Miyake, states in his declaration: "The government indicated that we had extended a similar plea offer to Young and that it did not involve an offer of less than 10 years of imprisonment." The government maintains that its statement was not a promise, and that Jackson's plea agreement "was not interdependent upon the government offering Young the same terms as those accepted by Jackson."

B

The government initially offered co-defendant Young a recommendation of a Guidelines sentence of 120–156 months in prison in exchange for his guilty plea to conspiracy to engage in sex trafficking. Young accepted the plea agreement and entered a guilty plea in June 2016, a little over six months after Jackson entered his guilty plea. In January 2017, Young moved to withdraw his guilty plea on the ground that the government had failed to disclose relevant evidence in his case. Over the government's objection, the court granted Young's motion.

After further negotiations, Young pleaded guilty in August 2017 to a less serious charge of interstate transportation for the purpose of prostitution. Unlike the conspiracy to commit sex trafficking charge, which could result in a life sentence, this offense carried a maximum statutory sentence of 10 years' imprisonment. In exchange for his plea, the government agreed to recommend a binding prison sentence of 90 months. The court accepted Young's guilty plea and imposed a 90-month sentence with three years of supervised release.

C

In January 2017, Jackson filed his first § 2255 motion claiming ineffective assistance of counsel in the determination of his base offense level. The motion was denied in April 2017.

In August 2018, after Young pleaded guilty a second time and received his 90-month sentence, Jackson filed the instant § 2255 motion, claiming that the government breached his plea agreement by offering Young a shorter sentence. Jackson contends that the government's oral promise was binding and induced his guilty plea. As for why he assured the court during the plea colloquy that there were no promises outside the written plea agreement, Jackson explained that he was simply following his attorney's instructions. Jackson later sought, in a March 6, 2020 letter to the court, to add an ineffective assistance of counsel claim based on his attorney's failure to commit the government's oral promise to writing and his erroneous advice at the plea hearing.

On March 30, 2020, the district court denied Jackson's § 2255 motion, declined to consider his ineffective assistance of counsel claim, and granted a certificate of appealability ("COA") ("March 30, 2020 Order"). The district court found that any alleged "promise" was not part of the plea agreement and thus there was no breach. On June 16, 2020, the court denied Jackson's motion for reconsideration.

Jackson appeals the district court's March 30, 2020 Order and the denial of his motion for reconsideration.

II

A

The government initially argued in its briefing that we lack jurisdiction to hear Jackson's appeal because his notice to appeal was untimely and invalid.  Although the government withdrew this challenge shortly before oral argument, we briefly explain why we have jurisdiction.

We review jurisdictional questions de novo, *United States v. Struckman*, 611 F.3d 560, 571 (9th Cir. 2010), and we review a district court's order denying or granting an extension to file a notice of appeal for abuse of discretion, *Pincay v. Andrews*, 389 F.3d 853, 858 (9th Cir. 2004).

Federal Rule of Appellate Procedure 3(c) requires a notice of appeal to specify the party taking the appeal, the order being appealed, and the court to which the appeal is taken.  Fed. R. App. P. 3(c).  The requirements of Rule 3(c) are interpreted liberally, and a technical variance from the Rule does not defeat jurisdiction if the litigant's filing is the "functional equivalent" of what is required under the procedural Rule.  *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 315–17 (1988); *see also United States v. Withers*, 638 F.3d 1055, 1061 (9th Cir. 2011) (construing a pro se appellant's filing liberally "as the appropriate motion or notice necessary for [him] to pursue [his] legal claims on appeal").  The notice of appeal must be timely.  *Bowles v. Russell*, 551 U.S. 205, 213–14 (2007).

Jackson's notice of appeal was due on May 29, 2020.  *See* Fed. R. App. P. 4(a)(1)(B).  Before that deadline, Jackson filed two motions indicating his intent to appeal the March 30, 2020 Order.  First, he mailed a motion to file out of time and a motion for reconsideration asking the district

court for a COA on April 28, 2020, which was filed on May 4, 2020.**3**   The next day, realizing the district court had already granted a COA in its March 30, 2020 Order, Jackson mailed a "Motion to Construe Request for (COA)" asking that his previous motion be construed as a request to appeal. Jackson's motion to construe was filed on May 11, 2020.

On June 16, 2020, the district court granted Jackson's motion to file out of time, denied his motion for reconsideration on the merits, and denied Jackson's motion to construe the COA request as a request to appeal.  The court instructed Jackson to file a notice of appeal by the standard deadline.  By this time, however, the notice of appeal deadline had already passed.  Jackson filed another notice of appeal on June 26, 2020.

Jackson's two requests for a COA made clear his intention to appeal the March 30, 2020 Order—Jackson referred to the district court's March 30, 2020 Order in his pro se motion to construe, and asked that his motion for reconsideration of the March 30, 2020 Order be construed as a request to appeal.  *See Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 772 (9th Cir. 1991) (finding that even errors in the notice of appeal "should not bar appeal as long as the intent to appeal a specific judgment can be fairly inferred and the appellee is not prejudiced or misled by the mistake" (citing *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 451 (9th Cir. 1983))).  Both were received by the district court before the May 29, 2020 deadline.  We

---

**3** Because his prison was on lockdown, Jackson did not learn of the court's March 30, 2020 Order until April 27, 2020, when the Public Defender's office notified him that his § 2255 motion had been denied.

therefore find that Jackson's notice of appeal was valid and timely.[4]

## B

The government contends that the district court lacked jurisdiction to hear Jackson's § 2255 motion because it is an improper "second or successive" motion. We review this question de novo. *See United States v. Buenrostro*, 895 F.3d 1160, 1164 (9th Cir. 2018).

Under 28 U.S.C. § 2244(b), if a habeas petition is second or successive, "the district court lacks jurisdiction and must dismiss the petition unless and until the court of appeals grants an application to file it." *Brown v. Muniz*, 889 F.3d 661, 667 (9th Cir. 2018) (citing 28 U.S.C. § 2244(b)(3)(A)). But not all second-in-time § 2255 motions are "second or successive." As we clarified in *Brown v. Muniz*, a petition is not second or successive "if the factual predicate for the claim accrued only after the time of the initial petition." *Id.* (citing *United States v. Buenrostro*, 638 F.3d 720, 725–26 (9th Cir. 2011) (per curiam)).

Here, Jackson's § 2255 motion is not "second or successive" because the factual circumstances underlying Jackson's motion did not occur until after his first § 2255 petition had been resolved. *See id*. Jackson filed his first § 2255 motion in January 2017, alleging ineffective assistance of counsel in connection with the determination of his base offense level in his sentence. The court denied the motion in April 2017. In the current motion, which he

---

[4] Because we find that Jackson's notice of appeal was timely, we do not address whether Jackson's motion to reconsider tolled the deadline to file the appeal.

filed in August 2018, Jackson claims the government breached his plea agreement when it recommended that Young serve a 90-month sentence in August 2017, four months *after* Jackson's first § 2255 motion was already resolved.

We are unpersuaded by the government's argument to the contrary.  According to the government, any alleged breach of the plea agreement occurred in June 2016, when the government offered Young its promise to recommend a sentence of between 120–156 months in prison, which was lower than Jackson's recommended sentence range of 120–180 months.  But the government ignores Jackson's claim that the government breached his agreement by offering Young a *lower* sentence recommendation of 90 months, not by offering Young a sentence with the same 120-month minimum.  On its face, Jackson's claim is clearly based on events that took place after his first petition was resolved. The district court correctly determined that it had jurisdiction to hear Jackson's motion.

C

We next consider the merits of Jackson's § 2255 motion. We review the district court's denial of a § 2255 motion de novo.  *United States v. Swisher*, 811 F.3d 299, 306 (9th Cir. 2016) (en banc).

A federal prisoner may collaterally attack the legality of his conviction or sentence through a motion to vacate, set aside, or correct his sentence under § 2255.  28 U.S.C. § 2255(a).  Ineffective assistance of counsel claims may be brought in collateral proceedings under § 2255, *Massaro v. United States*, 538 U.S. 500, 504 (2003), and a defendant who pleads guilty may challenge the knowing and voluntary nature of his plea, *United States v. Kaczynski*, 239 F.3d 1108,

1113–14 (9th Cir. 2001). Guilty pleas must be "voluntary" and "knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). "A habeas petitioner bears the burden of establishing that his guilty plea was not voluntary and knowing." *Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006).

1

Jackson claims that he was induced into pleading guilty by a verbal promise from the government that it would not offer Young a shorter sentence recommendation. The government concedes that a conversation occurred shortly before Jackson's plea hearing, but disputes that it made a binding promise about Young's sentence or that it induced Jackson's plea.

We review de novo whether the government breached a plea agreement, *United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000) (citing *United States v. Fisch*, 863 F.2d 690, 690 (9th Cir. 1988)), and review the district court's interpretation and construction of a plea agreement for clear error, *id.* (citing *United States v. Ajugwo*, 82 F.3d 925, 928 (9th Cir. 1996)).

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York,* 404 U.S. 257, 262 (1971). It is not enough for a defendant to claim that a promise was made, however; he must also show that his guilty plea rested in a significant degree on that promise. *See id.*

Our task is to determine what the defendant reasonably believed to be the terms of the plea agreement at the time of his plea. *United States v. Franco-Lopez*, 312 F.3d 984, 989 (9th Cir. 2002). To do so, we generally limit our review to the terms of the written plea agreement and the statements made under oath during the plea colloquy. *See Brown v. Poole*, 337 F.3d 1155, 1160 (9th Cir. 2003). "Because a plea agreement is, at bottom, a contract between the government and a criminal defendant, for the most part 'we construe [a] plea agreement using the ordinary rules of contract interpretation.'" *United States v. Transfiguracion*, 442 F.3d 1222, 1228 (9th Cir. 2006) (alteration in original) (citing *Poole*, 337 F.3d at 1159).

Because the sworn statements during the plea colloquy "speak[] in terms of what the parties in fact agree to," *United States v. Benchimol*, 471 U.S. 453, 455 (1985), they "carry a strong presumption of truth," *Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012). *See also Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) ("[T]he representations of the defendant, his lawyer, and the prosecutor at such a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.").

At the same time, we are mindful of the unique constitutional concerns involved in plea agreements: "The analogy to contract law is, . . . in certain circumstances imperfect, and we do not always follow it." *Transfiguracion*, 442 F.3d at 1228 (citing *United States v. Barron*, 172 F.3d 1153, 1158 (9th Cir. 1999) (en banc)); *see also United States v. Garcia*, 956 F.2d 41, 43–44 (4th Cir. 1992) (enforcing the government's verbal promise not to make a defendant cooperate and declining to strictly apply the parol evidence rule where the government conceded it

made the promise and wrote the promise in the cover letter of the plea agreement, but omitted it from the written agreement itself).  "The interests at stake and the judicial context in which [plea agreements] are weighed require that something more than contract law be applied." *Transfiguracion*, 442 F.3d at 1229 (internal citation and quotations omitted).

The record here, however, is not sufficient to overcome the presumption that Jackson's written plea agreement and his sworn statements during the plea colloquy describe the complete agreement reached between the parties.  Jackson's plea agreement was fully integrated and unambiguous.  The agreement explicitly states that it constitutes "the entire Plea Agreement between the parties," and that "no threats or promises, other than the promises contained in this Plea Agreement, were made to induce Defendant to enter his plea of guilty."  It does not contain any promise about Young's plea deal, nor does it condition Jackson's guilty plea on any future sentencing offer to Young.

Jackson's statements to the court during the plea colloquy were also clear and unambiguous.  He explicitly confirmed that the written agreement was complete and that the government made no other promises.  When asked whether there were "side agreements or anything that is not written down" in the plea agreement, Jackson responded: "No, there isn't, Your Honor."  And when asked if "anyone made any other or different promises or assurances" to him "of any kind to get [him] to plead guilty, other than what's in the[] plea agreement[]," Jackson told the court that the government did not make him any promises.  He confirmed more than once that the written agreement was full and complete, and agreed that it represented "in [its] entirety *any*

understanding or agreement that [he had] with the government."

The timing of the conversation between the parties is also instructive. Immediately after Jackson's counsel spoke with the government about Young, Jackson told the court that the government made him no promises other than what was written in the plea agreement. Now, however, Jackson asks us to ignore his sworn statements, disregard his written plea agreement, and convert the government's informal verbal statement about what it intended to do with Young's case into a binding promise. We cannot do so here.

This case is analogous to *United States v. Ajugwo*, 82 F.3d 925 (9th Cir. 1996). In *Ajugwo*, the petitioner argued that during plea negotiations, the government verbally agreed to waive its right to challenge the applicability of a sentencing "safety valve" provision. *Id.* at 927–28. The alleged verbal promise was explicitly contradicted by the written terms of the final plea agreement, however, which reserved the government's right to argue the sentencing provision did not apply. *Id.* The government denied verbally promising otherwise. *Id.* The plea agreement was fully integrated, stating there were "no additional promises, understandings or agreements" between the government and the petitioner, and that none could be added "unless in writing and signed by all parties." *Id.* at 929. Because the plea agreement was unambiguous and fully integrated, we declined to admit the petitioner's extrinsic (or "parol") evidence to add the alleged verbal promise, and rejected the claim that the agreement was breached. *Id.* at 928–29.

Like in *Ajugwo*, Jackson's plea agreement is unambiguous, fully integrated, and expressly disclaims the existence of other promises. The government denies making the promise and disputes Jackson's claims. The use of

extrinsic evidence to modify Jackson's plea agreement is similarly inappropriate. *See United States v. Pacheco-Osuna*, 23 F.3d 269, 271 (9th Cir. 1994) ("[W]e have previously eschewed the invitation to consider parol evidence for the purpose of adding terms to or changing the terms of an integrated plea agreement.").[5]

Jackson primarily relies on *Chizen v. Hunter*, 809 F.2d 560 (9th Cir. 1986), but that case is distinguishable. In *Chizen*, the parties conceded that the petitioner's attorney incorrectly told him that if he entered the plea bargain, the judge had committed not to sentence him to more than ninety days in jail. *Id.* at 561. The petitioner argued that this misrepresentation induced him to plead guilty. *Id.* at 562. At his sentencing hearing, when the court handed down a sentence of more than ninety days, the petitioner asked to withdraw his plea. *Id.* at 563. But because he already signed a waiver affirming that his plea was voluntary and that he understood the sentence would be decided by the judge, and he confirmed that he understood his plea during the colloquy, the government argued that he could not withdraw his guilty plea despite his attorney's false inducement. *Id.* at 562. We found that the waiver form and colloquy statements did not cure his attorney's misrepresentations under these unique circumstances. *Id.* at 562–63. The petitioner entered his plea based on the terms his attorney had misrepresented, and his waiver and colloquy—when examined in light of the

---

[5] Even if we were to consider the extrinsic evidence here, Jackson has not shown the existence of a binding promise or that his plea rested in any significant degree on it. *See Santobello*, 404 U.S. at 262. The district court therefore did not abuse its discretion in declining to grant an evidentiary hearing on this issue. *See* 28 U.S.C. § 2255(b) (an evidentiary hearing is not required if the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief").

misrepresentation—did not contradict his claim. *Id.* at 563. Accordingly, his plea was involuntary and could be withdrawn. *Id.*; *see also United States v. White*, 366 F.3d 291, 295, 297–300 (4th Cir. 2004) (finding "extraordinary circumstances" to warrant an evidentiary hearing on the government's breach of an oral promise when it was undisputed that petitioner's counsel erroneously informed him that his plea was conditioned on the promise, and the plea agreement and plea colloquy did not contradict his claim).

In Jackson's case, of course, the government does not concede that its statement to Jackson's counsel was a promise, and the record before us does not demonstrate that Jackson entered the plea based on a misrepresentation by his attorney. Jackson raises several arguments about the effectiveness of his counsel, which will be explored on remand when the district court considers his ineffective assistance of counsel claim, as discussed below. For instance, Jackson claims he was following his attorney's instructions when he disclaimed the verbal promise at the colloquy and was assured by his attorney that "he would handle it." Jackson also contends that his attorney's failure to commit the verbal promise into writing constitutes ineffective assistance of counsel. These issues should be addressed in the first instance by the district court and thus are not before us here.

This case also does not rise to the level of *Santobello v. New York*, where the government admitted it promised not to make a sentencing recommendation and its promise induced the petitioner's plea. 404 U.S. at 262. When the government broke its promise, it argued that its breach was unintentional and immaterial. *Id.* at 259, 262. The Supreme Court disagreed and held that the government needed to

fulfill the promise it made that induced the petitioner to plead guilty.  *Id.* at 262–63.

On this record, Jackson's claim for breach fails.

2

The government also argues that Jackson's breach of plea agreement claim is barred by the collateral attack waiver.  Under the terms of the plea agreement, Jackson waived his right to collaterally attack his sentence other than to challenge the effectiveness of counsel.  We enforce collateral attack waivers that are knowing and voluntary. *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993); *see Fox v. Johnson*, 832 F.3d 978, 989 (9th Cir. 2016) ("We agree that [defendant] had a constitutional right to enforce the plea agreement, and that a waiver of a constitutional right must be knowing and voluntary." (internal citations omitted)).  Jackson does not claim that his collateral attack waiver was involuntary or otherwise challenge its validity.

Instead, Jackson argues that the waiver is invalid because the government breached the plea agreement.  *See United States v. Hernandez-Castro*, 814 F.3d 1044, 1045 (9th Cir. 2016) ("A defendant is released from his or her appeal waiver if the government breaches the plea agreement." (citing *United States v. Gonzalez*, 16 F.3d 985, 989–90 (9th Cir. 1993))).  Because we find that the government did not breach Jackson's plea agreement, however, we agree with the district court that Jackson waived his right to collaterally attack his sentence on this basis.  Therefore, the waiver is enforceable.

## D

We remand for the district court to consider the merits of Jackson's ineffective assistance of counsel claim in the first instance.  Jackson filed a letter on March 6, 2020 asking to add an ineffective assistance of counsel claim to his § 2255 motion on the grounds that counsel 1) failed to ensure the government's promise about Young was included in the written plea agreement, 2) failed to raise the issue at the plea hearing, and 3) instructed Jackson to tell the court there were no other promises aside from the written agreement.

Additional claims may relate back to timely filed § 2255 motions.  Fed. R. Civ. P. 15(c); *Anthony v. Cambra*, 236 F.3d 568, 576 (9th Cir. 2000).  An amendment "relates back" if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B). Pro se motions from prisoners are to be liberally construed. *United States v. Seesing*, 234 F.3d 456, 462 (9th Cir. 2001).

The district court abused its discretion by failing to consider Jackson's pro se letter as a request to amend his § 2255 motion to add this claim.  In its March 30, 2020 Order, the district court stated that Jackson's motion "does not assert a claim of ineffective assistance of counsel," but did not address Jackson's March 6, 2020 request to amend his § 2255 motion.  Jackson's ineffective assistance of counsel claim clearly "relates back" to the substance of his § 2255 motion, and on remand the district court must grant his request to amend and consider the merits of this claim. The collateral attack waiver does not apply to claims of ineffective assistance of counsel, so this claim is not barred.

**AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.**