**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JAMES D. MACIEL,
*Petitioner-Appellant*,

v.

MATTHEW L. CATE; J. FLORES,
*Respondents-Appellees*.

No. 11-56620

D.C. No.
2:10-cv-07089-
AG-RNB

OPINION

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted
July 9, 2013—Pasadena, California

Filed September 25, 2013

Before: Fortunato P. Benavides,[*] Jay S. Bybee,
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Nguyen

---

[*] The Honorable Fortunato P. Benavides, Senior Circuit Judge for the U.S. Court of Appeals for the Fifth Circuit, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

The panel affirmed the district court's denial of a 28 U.S.C. § 2254 habeas corpus petition challenging a parole term and sex-offender registration requirement imposed under California state law that were not part of the criminal judgment.

The panel held that the sole certified issue, petitioner's parole challenge, was moot because he is no longer on parole and has not identified a continuing collateral consequence flowing from the expired parole term.

The panel granted a certificate of appealability as to petitioner's challenge to the sex-offender registration requirement and, after examining Supreme Court precedent and legislative intent, held that the requirement was neither contrary to nor an unreasonable application of clearly established federal law.

### COUNSEL

Matthew B. Larsen (argued), Deputy Federal Public Defender, and Sean K. Kennedy, Federal Public Defender, Los Angeles, California, for Petitioner-Appellant.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Gregory J. Marcot (argued), Deputy Attorney General, Kamala D. Harris, Attorney General of California, Jennifer A. Neill, Senior Assistant Attorney General, and Phillip Lindsay, Supervising Deputy Attorney General, San Diego, California, for Respondent-Appellee.

**OPINION**

NGUYEN, Circuit Judge:

California state prisoner James D. Maciel appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition challenging his sentence for committing lewd and lascivious acts with force against a child. Maciel contends that the state violated *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936), by imposing a parole term and a sex-offender registration requirement that were not part of his criminal judgment. We find Maciel's challenge to his parole term moot because he is no longer on parole. With respect to Maciel's claim that imposition of the sex-offender registration requirement violates *Wampler*, we hold that the state court's decision was neither contrary to nor an unreasonable application of clearly established federal law. Accordingly, we affirm.

**Background**

In 1986, Maciel was convicted and sentenced to 42 years and four months in state prison. The sentencing court did not on the record impose a parole term or order Maciel to register with the state as a sex offender following release from imprisonment, despite the fact that state law mandated both

requirements.[1]  *See* Cal. Penal Code §§ 290, 3000 (1986). These requirements also did not appear on the abstract of judgment or, apparently, the criminal judgment itself.[2]

Maciel was released from custody in 2008, at which time the state informed him that he would be subject to a three-year parole period and sex-offender registration requirement. Eleven months later, Maciel was reimprisoned for violation of parole conditions.

Maciel then filed a round of habeas petitions in the state courts, claiming that the parole and registration requirements violated his right to due process because they were not part of his sentence.  The California courts denied relief.  The California Court of Appeal, which issued the last reasoned decision, found that "[p]arole periods and registration requirements are statutorily mandated, and not subject to amendment by the trial court."[3]

---

[1] Under California's determinate sentencing law in place at the time, courts were required to "inform the defendant that as part of the sentence after expiration of the term he or she may be on parole for a period." Cal. Penal Code § 1170(c) (1986).  Thirty days before an inmate's release, the department of corrections was required to meet with the inmate to set the terms of parole and its duration, up to three years, unless waived altogether.  *Id.* § 3000 (1986).

[2] Although the state court judgment is not included in the record on appeal, the state does not dispute Maciel's assertion that the judgment omitted a parole term and registration requirement.

[3] The state court of appeal also found that Maciel's claims were procedurally defaulted under *In re Clark*, 855 P.2d 729, 742–43, 745, 750–51 (Cal. 1993), and *McCleskey v. Zant*, 499 U.S. 467, 498 (1991), because he had presented them in unjustified, successive habeas corpus petitions.  The state has forfeited this defense, however, by failing to raise

Maciel sought habeas relief in the district court, arguing that the state court decisions were contrary to *Wampler*. The district court denied relief and granted a certificate of appealability solely on the issue of whether the imposition of a parole term violated *Wampler*. Maciel timely appealed and seeks to expand the certificate of appealability to include his second claim challenging the imposition of sex-offender registration requirements. While his appeal was pending, he was discharged from parole, having previously been re-released from prison.

## Jurisdiction and Standard of Review

### A.

We first address Maciel's request to expand the certificate of appealability because it affects our jurisdiction. Now that Maciel has completed his sentence, there is no longer a live controversy over the state's imposition of a parole term. A criminal sentence—unlike the underlying convictions which he does not challenge—carries no presumption of collateral consequences. Thus, a habeas petitioner must show "some concrete and continuing injury other than the now-ended incarceration or parole . . . if the suit is to be maintained." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

Because Maciel has not identified a continuing collateral consequence that flows from his expired parole term, we find

---

it either in the district court or here. *See Chaker v. Crogan*, 428 F.3d 1215, 1220 (9th Cir. 2005).

the sole certified issue moot.[4] Therefore, we lack jurisdiction over this appeal unless we grant Maciel's motion to certify his claim involving the imposition of a sex-offender registration requirement. *Cf. Phelps v. Alameda*, 366 F.3d 722, 729–30 (9th Cir. 2004) (holding that appeal from denial of habeas petition was moot where COA did not encompass district court's ruling that independently precluded relief and where we could not expand certificate of appealability sua sponte). We may expand the certificate of appealability if Maciel "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Ngo v. Giurbino*, 651 F.3d 1112, 1115 n.1 (9th Cir. 2011). This means only "that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; *or* that the questions are adequate to deserve encouragement to proceed further." *Muth v. Fondren*, 676 F.3d 815, 822–23 (9th Cir. 2012) (quoting *Lambright v.*

---

[4] Maciel argues that the registration and other conditions are triggered by his conviction *and* sentence. *See, e.g.*, Cal. Penal Code § 3004(b) ("Every inmate who has been convicted for any felony violation of a 'registerable sex offense' . . . and who is committed to prison *and released on parole* . . . shall be monitored by a global positioning system for life." (emphasis added)). Thus, his argument goes, the issue is not moot because if the parole term is deemed invalid, the registration conditions would also be invalidated. Maciel has forfeited this argument by failing to address it in his reply brief even though the state raised mootness in its answering brief. *See United States v. McEnry*, 659 F.3d 893, 902 (9th Cir. 2011). Instead, he improperly raised the argument for the first time in a Federal Rule of Appellate Procedure 28(j) letter filed shortly prior to oral argument. Even if considered on the merits, Maciel's argument still fails. Parole is imposed by law in felony sex offense convictions. *See* Cal. Penal Code § 3000(a)(1). Under Maciel's interpretation, the phrase "and released on parole" would be rendered superfluous. *See City of Alhambra v. Cnty. of Los Angeles*, 288 P.3d 431, 442 (Cal. 2012) (disfavoring statutory constructions that render language superfluous).

*Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000)) (internal quotation mark omitted). We think that Maciel has met this standard. Therefore, we certify Maciel's second claim for relief and exercise jurisdiction under 28 U.S.C. §§ 1291 and 2253.

**B.**

We review the district court's denial of a habeas petition de novo. *Varghese v. Uribe*, 720 F.3d 1100, 1105 (9th Cir. 2013). Although Maciel was convicted in 1986, our review of his claims is circumscribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, which applies to all habeas petitions filed after its effective date. *See Lindh v. Murphy*, 521 U.S. 320, 322–23 (1997). We may grant relief only if Maciel shows that the state court's adjudication of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

**Analysis**

The sole question we face is whether the state court's denial of Maciel's claim was contrary to or an unreasonable application of *Wampler*. We thus begin with a discussion of that case.

**A.**

Thomas Wampler was convicted of income tax fraud and sentenced to an 18-month term in a federal penitentiary and a $5,000 fine. *Wampler*, 298 U.S. at 461. The clerk of court forwarded a warrant of commitment to the penitentiary but inserted language to the effect that Wampler was to remain imprisoned until he paid the fine or was discharged by due process of law. *Id.* at 461–62. Near the end of his prison term, Wampler petitioned the district court to remove this language from the warrant of commitment, *id.* at 462, presumably because he had not yet paid the fine and wished to be released.

The district court denied the petition on the ground that, for at least 40 years, it had followed the Maryland common law practice of imposing a repayment condition but not including it in the judgment. Instead, the clerk of court would prepare the warrant of commitment with the condition included unless directed otherwise by the court. *Id.*; *United States v. Wampler*, 10 F. Supp. 609, 610–11 (D. Md. 1935). Wampler obtained habeas relief from a different district court,[5] and the warden appealed to the Third Circuit, which certified the relevant legal questions to the United States Supreme Court.

Justice Cardozo, writing for a unanimous Court, held that Wampler was entitled to habeas relief because the repayment condition of release, contained only in the warrant of commitment but not in the district court's judgment, was void. *Wampler*, 298 U.S. at 465. Although the constitutional

---

[5] Wampler was convicted in the District of Maryland but sought habeas relief in the Middle District of Pennsylvania, where he was confined.

basis for the Court's holding was not explained, the decision was apparently grounded in considerations of due process.[6] *See Earley v. Murray*, 451 F.3d 71, 76 n.1 (2d Cir. 2006) (positing that constitutional due process guarantees were the source of *Wampler*'s rule because *Wampler* recognized that "[a]ny deficiency in the sentence could have been corrected through the proper procedures"), *cert. denied*, 551 U.S. 1159 (2007).

## B.

Seventy years later, the Second Circuit confronted facts in *Earley* materially identical to those here and granted habeas relief under *Wampler*. Sean Earley pled guilty to second degree attempted burglary and was sentenced to six years in prison. *Earley*, 451 F.3d at 73. Although state law mandated a term of post-release supervision, the sentencing court did not orally impose it, nor was it reflected in the written judgment or order of commitment. The New York Department of Correctional Services administratively added a five-year term of post-release supervision to Earley's sentence without informing him. *Id.* The Second Circuit held that, in light of *Wampler*, "clearly established Supreme Court precedent renders the five-year [post-release supervision] term added to Earley's sentence . . . invalid." *Id.* at 76.[7]

---

[6] The Supreme Court relied primarily on a line of cases from our court that found the principle "obvious," *Wagner v. United States*, 3 F.2d 864, 864–65 (9th Cir. 1925), and requiring little discussion, *Boyd v. Archer*, 42 F.2d 43, 43–44 (9th Cir. 1930).

[7] The Second Circuit recently reaffirmed its holding in *Earley*, rejecting a claim for qualified immunity by a state correctional official who allegedly imposed conditions of post-release supervision on the plaintiffs despite the absence of any orders by the sentencing courts imposing those

## C.

On the assumption that *Earley* was correctly decided, Maciel asks us to extend it and find that the administrative imposition of the sex-offender registration requirement, rather than by a court order, also violates *Wampler*. Whether or not the Second Circuit is correct about *Wampler*'s scope, we think the California courts were entirely reasonable in distinguishing *Wampler* from the facts of this case.

## 1.

There are a number of important differences between Wampler's and Maciel's situations. Most obviously, *Wampler* concerned illegitimate *detention*, not the collateral consequences of that detention. The Supreme Court emphasized Wampler's longer time in custody when finding that the discrepancy between the judgment and punishment was substantial enough to warrant habeas relief:

> A warrant of commitment departing in matter of substance from the judgment back of it is void. Being void and not merely irregular, its nullity may be established upon a writ of habeas corpus. The prisoner is detained, not by virtue of the warrant of

---

requirements. *Vincent v. Yelich*, 718 F.3d 157, 165 (2d Cir. 2013) (holding that under both *Wampler* and *Earley*, it was "clearly established [in 2006] that the administrative imposition of [post-release supervision] terms not imposed by the court is unconstitutional"). The Second Circuit has also held that the right at issue was clearly established by *Wampler* for habeas purposes but not for qualified immunity purposes until after *Earley* clarified the law. *See Scott v. Fischer*, 616 F.3d 100, 105–08 (2d Cir. 2010).

> commitment, but on account of the judgment
> and sentence.  If the judgment and sentence
> do not authorize his detention, no "mittimus"
> will avail to make detention lawful.

*Wampler*, 298 U.S. at 465 (internal quotation marks and citations omitted).  The California courts reasonably could have concluded that *Wampler*'s reach was limited to claims involving actual custody.

**2.**

Another reason why the California courts were reasonable in distinguishing *Wampler* is that it expressly applies only to discretionary sentencing terms rather than the statutorily mandated requirements at issue here.  *Wampler* involved a statute permitting the district court, as it saw fit, to impose a sentencing condition that the defendant remain in prison until any fine imposed was repaid.  298 U.S. at 463.  Justice Cardozo explained why the discretionary nature of the punishment matters:

> Imprisonment *does not follow automatically*
> upon a showing of default in payment.  It
> follows, if at all, because the consequence has
> been prescribed *in the imposition of the*
> *sentence*.  The choice of pains and penalties,
> *when choice is committed to the discretion of*
> *the court*, is part of the judicial function.  This
> being so, it must have expression in the
> sentence, and the sentence is the judgment.

*Id.* at 463–64 (emphasis added).  The negative implication of this key passage is that when a requirement *does* follow

automatically from the conviction, such as when the choice to impose it was made by the legislature rather than the judge at sentencing, the "choice of pains and penalties" is *not* part of the judicial function and need not have expression in the sentence and judgment.

Justice Cardozo later reiterated the distinction between discretionary and non-discretionary punishment by rejecting the contention that the tradition followed by the sentencing judge and the clerk of court was so firmly established as to have legal effect:

> The court speaks through its judgment, and not through any other medium. It is not within the power of a judge by instructions to a clerk to make some other medium the authentic organ of his will. We are told that the instructions may be likened to a rule of court. They were not published; they were not reduced to writing; they are lacking in the formal safeguards that protect against mistake and perhaps against oppression.

*Id.* at 465 (emphasis added). Again, the negative implication is that if the punishment *had* been prescribed by rule of court or other written law, its imposition by an administrator would have withstood scrutiny. Laws duly enacted by the legislature that mandate a particular punishment upon conviction contain the procedural safeguards that concerned Justice Cardozo.

The Second Circuit concluded that the discretionary nature of the punishment was not material to *Wampler*, which in the Second Circuit's view, "went on to articulate a broader

holding: The judgment of the court establishes a defendant's sentence, and that sentence may not be increased by an administrator's amendment." *Earley*, 451 F.3d at 75. But this begs the question. If, in light of the underlying statutory scheme, the court's judgment of conviction and sentence of imprisonment *require* that the defendant be subject to additional punishment after release, an administrator arguably has not "amended" the judgment in any sense by carrying out that punishment. *Wampler* did not criticize the district court just for failing to set forth the punishment at issue in writing; it also criticized the district court's assumption that a warrant of commitment, which did not "profess to regulate the form or content of the sentence," could affect it in any way. *See* 298 U.S. at 466. A duly enacted law of universal application, in contrast, would regulate the sentence without offending the Constitution.

**3.**

Even assuming that *Wampler* extends to non-custodial sentencing conditions imposed by an administrator rather than a judge, it still would have been reasonable to distinguish *Wampler* on the ground that it involved *punishment* and not simply burdensome regulation.

The district court here found that the registration requirement amounted to a non-punitive regulatory measure that was not part of Maciel's sentence and thus need not be included in the court's judgment. Maciel faults the district court's reliance on cases involving ex post facto claims, a theory of relief he disavows, but his *Wampler* claim is analytically similar. Both types of claim assert that the state is subjecting a convicted felon to illegal punishment that could have been but was not lawfully imposed at the time of

the crime or sentence, and the threshold question in either case is whether the state action was punitive or civil in nature. *See Seling v. Young*, 531 U.S. 250, 266 (2001) ("Whether a confinement scheme is punitive has been the threshold question for [double jeopardy, ex post facto, due process, and Fifth Amendment privilege against self-incrimination] constitutional challenges."); *Williamson v. Gregoire*, 151 F.3d 1180, 1184 (9th Cir. 1998) (characterizing Washington's sex-offender registration requirement as a "collateral consequence" of conviction—rather than a "restraint on liberty" that would satisfy the "in custody" requirement—in part because it "is 'regulatory and not punitive,' and therefore did not amount to punishment within the meaning of the Ex Post Facto Clause" (quoting *Russell v. Gregoire*, 124 F.3d 1079, 1093 (9th Cir. 1997))).

For due process purposes, when determining "whether a restriction on liberty constitutes impermissible punishment or permissible regulation, we first look to legislative intent." *Lopez-Valenzuela v. Cnty. of Maricopa*, 719 F.3d 1054, 1059 (9th Cir. 2013) (quoting *United States v. Salerno*, 481 U.S. 739, 747 (1987)) (internal quotation mark omitted). "Absent an express intent on the part of the legislature to punish, 'the punitive/regulatory distinction turns on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it.'" *Id.* (quoting *Salerno*, 481 U.S. at 747).

**a.**

There are two sex-registration laws at issue here. First, the state legislature enacted the Sex Offender Punishment, Control, and Containment Act of 2006 ("SOPCCA"), ch. 337,

2006 Cal. Stat. 2584.    Later that year, the California electorate passed Proposition 83, the Sexual Predator Punishment and Control Act:  Jessica's Law.

SOPCCA's "primary purpose . . . was to prevent 'future victimization' of the community by sex offenders." *People v. Cornett*, 274 P.3d 456, 459 (Cal. 2012).    Similarly, Proposition 83 was "a wide-ranging initiative that [sought] to address the problems posed by sex offenders." *People v. McKee*, 223 P.3d 566, 571 (Cal. 2010).  To accomplish these goals, both SOPCCA and Proposition 83 (1) created several new criminal offenses involving child victims; (2) increased penalties for existing sex crimes against children; and (3) changed parole and probation provisions for sex offenders, sex offender registration requirements, and the system for collecting and disseminating information regarding sex offenders.  *Cornett*, 274 P.3d at 459–60; *McKee*, 223 P.3d at 571.  While the first two changes clearly serve a punitive purpose, the last—the only one at issue here—does not.  California heightened its registration and tracking requirements to better regulate the problems posed by sex offenders rather than to punish them.  *See McKee*, 223 P.3d at 576–78.

**b.**

The    registration    requirement,    without    more, unquestionably serves a regulatory purpose, as several cases involving similar laws have held.  *See, e.g.*, *United States v. Juvenile Male*, 670 F.3d 999, 1012 (9th Cir. 2012) ("[I]ndividuals convicted of serious sex offenses do not have a fundamental right to be free from sex offender registration requirements, and . . . such requirements serve 'a legitimate nonpunitive purpose of public safety, which is advanced by

alerting the public to the risk of sex offenders in their community.'" (quoting *Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir. 2004))).

A closer question is whether the registration-related burdens on Maciel's liberty are also regulatory as opposed to punitive. Maciel identifies several such burdens: mandatory GPS monitoring for life, Cal. Penal Code § 3004(b), a lifetime ban on living within 2,000 feet of a school or park where children gather as well as any additional residency restrictions that local governments impose, *id.* § 3003.5(b)–(c), monthly reporting requirements while he remains homeless, *id.* § 290.011(a), and the publication on a website of his crime, identity, appearance, any future address, and assessment for future dangerousness, *id.* §§ 290.04(a), 290.46(b).[8]

When classifying a measure as either punitive or civil, courts generally consider the following factors: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in

---

[8] In fact, Maciel may not be subject to all of these requirements. At least one state appellate court held that the GPS monitoring requirements and residency restrictions cannot be imposed retroactively, *People v. Milligan*, 83 Cal. Rptr. 3d 550, 559–60 (Ct. App. 2008), although the court later withdrew its opinion, finding the issue unripe, 2009 WL 3119692 (Cal. Ct. App. Sept. 29, 2009).

relation to the alternative purpose assigned. *United States v. Reynard*, 473 F.3d 1008, 1020 (9th Cir. 2007) (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963)).

Of the four consequences of his registration as a sex offender that Maciel claims are punitive, two—the monthly reporting requirements while he is homeless and the publication of information about him on a website—are not materially different from registration requirements that we and other circuits have found to be regulatory. *See Juvenile Male*, 670 F.3d at 1005, 1013–14 (noting that several circuits have upheld as civil regulatory measures requirements that the contents of sex-offender registries be published and the offenders register every three months). The two most intrusive consequences of registration are the lifetime GPS monitoring requirement and the residency restrictions. A divided panel of the Sixth Circuit, evaluating a similar GPS monitoring requirement under the *Mendoza-Martinez* framework, concluded that the measure was a civil regulatory scheme. *See Doe v. Bredesen*, 507 F.3d 998, 1003–07 (6th Cir. 2007). Likewise, an Eighth Circuit panel split on whether a residency restriction similar to California's was punitive, the majority finding that it was regulatory under *Mendoza-Martinez*. *Doe v. Miller*, 405 F.3d 700, 718–23 (8th Cir. 2005).

These cases illustrate that, at most, reasonable jurists can disagree whether, under clearly-established Supreme Court law, the consequences of registration as a sex offender in California are punitive. Therefore, given AEDPA's deferential standard of review, we hold that the California courts reasonably concluded that *Wampler* does not encompass Maciel's registration claim. *See Harrington v.*

*Richter*, 131 S. Ct. 770, 786 (2011) ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. . . . The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." (internal quotation marks and citation omitted)).

## Conclusion

There are various grounds on which the California courts reasonably could have denied Maciel's *Wampler* claim, including the actual ground given by the California Court of Appeal—that parole and registration requirements are imposed by law and are not subject to the sentencing court's discretion. Therefore, the judgment of the district court denying Maciel's habeas petition is

**AFFIRMED.**