**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

PETER J. MUNOZ, JR.,
*Petitioner-Appellant*,

v.

GREGORY SMITH, Warden; ATTORNEY
GENERAL FOR THE STATE OF NEVADA,
*Respondents-Appellees*.

No. 20-16327

D.C. No.
3:11-cv-00197-
LRH-RAM

OPINION

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted June 18, 2021
San Francisco, California

Filed November 15, 2021

Before: Daniel A. Bress and Patrick J. Bumatay, Circuit
Judges, and Douglas L. Rayes,* District Judge.

Opinion by Judge Bress

---

* The Honorable Douglas L. Rayes, United States District Judge
for the District of Arizona, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

Vacating the district court's order denying on the merits Peter J. Munoz, Jr.'s federal habeas corpus petition challenging the lifetime supervision imposed on him by the State of Nevada, and remanding for further proceedings, the panel held that the district court lacked jurisdiction to adjudicate the petition under 28 U.S.C. § 2254.

The lifetime supervision consists of the following conditions: (1) a $30 monthly fee to defray the costs of his supervision; (2) electronic monitoring; and (3) a requirement that he may reside at a location only if the residence has been approved by his parole officer, and that he keep his parole officer informed of his current address. The panel held that under this court's precedents, and on this record, these conditions, individually and collectively, do not severely and immediately restrain Munoz's physical liberty. The panel concluded that Munoz is therefore not challenging his "custody," and his claims are not cognizable in federal habeas.

The panel wrote that, on remand, the district court may determine whether to allow Munoz leave to file an amended habeas petition that could secure jurisdiction under § 2254, and/or consider whether it would be appropriate to construe Munoz's habeas petition to plead a cause of action under 42 U.S.C. § 1983.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Heather Fraley (argued), Assistant Federal Public Defender; Rene L. Valladares, Federal Public Defender; Office of the Federal Public Defender, Las Vegas, Nevada; for Petitioner-Appellant.

Katrina A. Samuels (argued), Deputy Attorney General; Aaron D. Ford, Attorney General; Office of Nevada Attorney General, Las Vegas, Nevada; for Respondents-Appellees.

**OPINION**

BRESS, Circuit Judge:

A person may seek federal habeas relief if he is "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under many state regimes, convicted sex offenders who are released from prison are nonetheless subject to additional forms of ongoing supervision. When a person seeks to challenge those conditions in a federal habeas petition, a federal court must determine whether the conditions of supervision are, in fact, "custodial," such that the federal habeas statute applies.

In this case, we consider whether the petitioner can challenge in federal habeas the lifetime supervision that Nevada has imposed on him, which consists of the following conditions: (1) a $30 monthly fee to defray the costs of his supervision; (2) electronic monitoring; and (3) a requirement that he may reside at a location only if the residence has been

approved by his parole officer, and that he keep his parole officer informed of his current address. We hold that under our precedents and on this record, these conditions do not severely and immediately restrain the petitioner's physical liberty. Petitioner is therefore not challenging his "custody," and his claims are not cognizable in federal habeas.

We have no occasion to decide whether petitioner's underlying constitutional challenge to his supervisory conditions would have merit if presented through another possible avenue of relief, such as a claim under 42 U.S.C. § 1983. We hold only that the district court lacked the ability to adjudicate the petition under 28 U.S.C. § 2254. We therefore remand this case to the district court for further proceedings consistent with this opinion.

## I

The procedural history of petitioner's efforts to secure federal habeas relief is extensive, and we recite only those events relevant to this appeal. In 2002, petitioner Peter Munoz digitally penetrated his daughter. A few years later, he pleaded guilty to attempted lewdness with a child under the age of 14. Nev. Rev. Stat. §§ 193.330, 201.230.

In his plea agreement, Munoz acknowledged that "the Court will include as part of [his] sentence . . . lifetime supervision commencing after any period of probation or any term of imprisonment and period of release upon parole." The state court sentenced Munoz to 48–144 months' imprisonment, required him to register as a sex offender, and imposed a special sentence of lifetime supervision. *See* Nev. Rev. Stat. § 176.0931(1) ("If a defendant is convicted of a sexual offense, the court shall include in sentencing . . . a special sentence of lifetime supervision.").

Nevada's rules for lifetime supervision are governed by Nev. Rev. Stat. § 213.1243. At the time of Munoz's 2006 sentencing, the 1997 version of § 213.1243 was in effect. Under that statute, lifetime supervision was to be established through regulations promulgated by the State Board of Parole Commissioners (the "Parole Board"). Nev. Rev. Stat. § 213.1243(1). The Parole Board was required to, among other things, "[s]upervise all persons . . . released to them for supervision"; "[f]urnish to each person released under their supervision a written statement of the conditions"; and "[k]eep informed concerning the conduct and condition of all persons under their supervision." *Id.* §§ 213.1096(2)–(4).

Nevada law further specified that the Parole Board was directed to establish "a schedule of fees to defray the costs of supervision," with a "monthly fee of at least $30" that could be waived in cases of economic hardship. Nev. Rev. Stat. §§ 213.1076(1)–(2). A later law, Senate Bill 471, amended Nev. Rev. Stat. § 213.1243 and directed the Parole Board to impose several additional conditions of lifetime supervision, including electronic monitoring and certain residency approval requirements and prohibitions. *See id.* §§ 213.1243(3)–(5).

In 2011, and while he was still incarcerated, Munoz filed a federal habeas petition challenging, among other things, Senate Bill 471's new conditions. In 2013, with his federal habeas litigation ongoing, Munoz's term of imprisonment ended, and his lifetime supervision began. Shortly before his release, Nevada's Parole Board provided Munoz with his conditions of lifetime supervision. The list included at least seventeen separate conditions, many of which were not listed in the statute. In 2014, Munoz filed his first amended federal habeas petition. As relevant here, Munoz alleged

that his lifetime supervision conditions violated his due process rights and the Ex Post Facto Clause.

Based on intervening developments in Nevada law and the State's commitments in other cases, *see ACLU of Nev. v. Masto*, 670 F.3d 1046, 1050–52, 1064–65 (9th Cir. 2012); *McNeill v. State*, 375 P.3d 1022 (Nev. 2016); *White v. State*, 2018 WL 4908402, at *1 (Nev. 2018)—which may be relevant to Munoz's underlying constitutional arguments but are not relevant here—the Parole Board amended Munoz's conditions to include only the three now at issue.

First, Munoz is required to pay a supervision fee of at least $30 per month. *See* Nev. Rev. Stat. § 213.1243(5)(c). Second, through what he describes as an ankle monitor, Munoz is subject to "a system of active electronic monitoring that is capable of identifying [his] location and producing, upon request, reports or records of [his] presence." *Id.* § 213.1243(5)(b). Third, Munoz may "reside at a location only if" the "residence has been approved by the Parole and Probation officer assigned to [him]"; he must "keep[] the Parole and Probation officer informed of [his] current address"; and he may not live in a residence with "more than three persons who have been released from prison" unless it is a licensed transitional facility for released offenders. *Id.* § 213.1243(3). Munoz is no longer subject to the other restrictions that the Parole Board initially imposed upon him when he was released from prison.

In 2017, Munoz filed a second amended federal habeas petition. The district court denied Munoz's petition on the merits, holding that Nevada's lifetime supervision requirements did not violate the Ex Post Facto Clause or Munoz's due process rights. The district court issued a certificate of appealability on this issue. After we heard oral argument, we directed the parties to submit supplemental

briefs on whether the district court had jurisdiction over Munoz's petition.

## II

The State now argues that the district court lacked jurisdiction to consider Munoz's petition because his claims are not cognizable in federal habeas. We have jurisdiction to consider the jurisdictional question. *See, e.g.*, *Shaboyan v. Holder*, 652 F.3d 988, 989 (9th Cir. 2011) (per curiam). The answer turns on whether Munoz's lifetime supervision places him "in custody" under 28 U.S.C. § 2254. Case law confirms that Munoz's supervisory conditions are not "custodial" conditions within the meaning of the federal habeas statute. We therefore hold that the district court lacked jurisdiction to adjudicate Munoz's federal habeas petition as presented.

## A

Federal courts "shall entertain an application for a writ of habeas corpus in behalf of a person *in custody* pursuant to the judgment of a State court only on the ground that he is *in custody* in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). The writ of habeas corpus "is the exclusive vehicle for claims brought by state prisoners that fall within the core of habeas." *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (en banc). A claim is "within the core of habeas" when, if successful, it "terminates *custody*, accelerates the future release from *custody*, []or reduces the level of *custody*." *Id.* at 930 (emphasis added) (quoting *Skinner v. Switzer*, 562 U.S. 521, 534 (2011)). Because "Section 2254(a)'s 'in custody' requirement is jurisdictional," it "'is the first question we must consider.'" *Bailey v. Hill*, 599

F.3d 976, 978 (9th Cir. 2010) (quoting *Williamson v. Gregoire*, 151 F.3d 1180, 1182 (9th Cir. 1998)).

The "in custody" language appears twice in § 2254(a). The first reference to "in custody" requires that the habeas petition be filed "in behalf of a person in custody." *Bailey*, 599 F.3d at 978. Munoz meets this "in custody" requirement because he was "in custody at the time" the relevant petition was filed, serving his term of imprisonment. *See id.* at 979 (explaining that a "petitioner's subsequent release from custody does not itself deprive the federal habeas court of its statutory jurisdiction" (quotations omitted)).

But the fact that a petitioner is "in custody" at the time of filing is "insufficient to confer jurisdiction" because the petitioner must also meet the second "in custody" requirement. *Id.* To satisfy the second requirement, Munoz must be challenging the "lawfulness of his custody." *Id.* at 980. The second "in custody" requirement, then, "precludes courts from reviewing a challenge to a non-custodial portion of a criminal sentence." *Id.* at 981 (citing *Virsnieks v. Smith*, 521 F.3d 707, 721 (7th Cir. 2008)); *see also, e.g.*, *Dominguez v. Kernan*, 906 F.3d 1127, 1137 (9th Cir. 2018) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody." (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). The question, then, is whether Munoz—in challenging the lawfulness of his lifetime supervision—is challenging a *custodial* sentence.

Historically, the "chief use of habeas corpus" was "to seek the release of persons held in actual, physical custody in prison or jail." *Jones v. Cunningham*, 371 U.S. 236, 238 (1963). But in *Jones*, the Supreme Court interpreted "custody" to encompass circumstances in which the state has imposed "significant restraints on [a] petitioner's liberty." *Id.* at 242. That was because, *Jones* held, "[h]istory, usage,

and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus." *Id.* at 240. *Jones* concluded that a paroled prisoner was therefore in "custody" for habeas purposes due to a series of highly limiting and onerous conditions, such as that he be "confined . . . to a particular community, house, and job at the sufferance of his parole officer" and expected to "keep good company and good hours, work regularly, keep away from undesirable places, and live a clean, honest and temperate life." *Id.* at 242.

After *Jones*, the Supreme Court held that a petitioner released on his own recognizance pending execution of his sentence was "in custody" within the meaning of the federal habeas statute. *Hensley v. Mun. Ct., San Jose Milpitas Judicial Dist.*, 411 U.S. 345, 345–46 (1973). *Hensley* affirmed that the "custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty." *Id.* at 351. At the same time, *Hensley* noted, the writ's "use has been limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate." *Id.* Thus, "once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack." *Maleng v. Cook*, 490 U.S. 488, 492 (1989).

In the decades since *Jones*, our court and others have addressed whether various conditions imposed on sex offenders rendered them in "custody" for purposes of federal

habeas.  Our leading precedent in this area is *Williamson v. Gregoire*, 151 F.3d 1180 (9th Cir. 1998).  *Williamson* considered "whether a convicted child molester who has completed his sentence, but who must register as a sex offender under a so-called 'Megan's law,' is 'in custody' for purposes of federal habeas corpus."  *Id.* at 1181.

*Williamson* provided several examples of conditions that are "merely a collateral consequence of conviction, and do[] not meet the 'in custody' requirement."  *Id.* at 1183.  For instance, "the imposition of a fine," the revocation of a professional license or a driver's license, and "the inability to vote, engage in certain businesses, hold public office, or serve as a juror" are generally collateral consequences of conviction that do not render a person "in custody" under the federal habeas statute.  *Id.*

Within that framework, *Williamson* addressed whether Washington's sex offender registration law was a "genuine restraint on liberty" or "merely a collateral consequence" of conviction.  *Id.*  Washington law required the petitioner to register his address with the county sheriff, verify his address annually, notify the sheriff before moving, and notify the sheriff of enrollment in higher education.  *Id.* at 1181.  Failure to comply with these conditions exposed the petitioner to felony charges.  *Id.*  We held that these conditions were not "custodial" and therefore could not be challenged in federal habeas.  *Id.* at 1184.

*Williamson* considered two factors in placing Washington's sex offender law on the "collateral consequences" side of the ledger.  First, and most importantly, *Williamson* considered the petitioner's "physical sense of liberty," asking "whether the legal disability in question somehow limits the putative habeas petitioner's movement" in a "significant" way.  *Id.* at 1183–

84. On this first factor, we did "not see a significant restraint on Williamson's physical liberty." *Id.* at 1183–84. We reasoned that the law did not actually prevent the petitioner from traveling, did not require him to "personally appear at a sheriff's office to register," did not "demand his physical presence at any time or place," and did not "specify any place in Washington or anywhere else where Williamson may not go." *Id.* at 1184.

In reaching this conclusion, we recognized that the "registration and notification provisions might create some kind of subjective chill on Williamson's desire to travel" or move to a new home. *Id.* Still, this was not "so severe" a restraint to qualify as a deprivation of physical liberty from a "custodial" perspective. *Id.* Washington's sex offender law thus "lack[ed] the discernible impediment to movement that typically satisfies the 'in custody' requirement." *Id.* Nor did the threat of criminal sanctions alter the analysis. *See id.* ("We do not think that the mere potential for future incarceration, without any present restraint on liberty, can satisfy the 'in custody' requirement.").

Second, *Williamson* noted that Washington's law was "regulatory and not punitive." *Id.* We addressed this point in *Williamson* only briefly, explaining that it supplied "[a]nother reason" for our holding, albeit not one that was "directly controlling" because the "'in custody' requirement may be satisfied by constraints other than criminal punishment." *Id.* Instead, we found this second factor simply "bolster[ed] our conclusion" that the Washington law was not analogous to probation or parole and did not impose restraints on liberty severe enough to constitute "custody." *Id.*

We later applied *Williamson*'s reasoning to hold that other states' sex offender registration requirements did not

render the offenders "in custody" for federal habeas purposes. In *Henry v. Lungren*, 164 F.3d 1240 (9th Cir. 1999), we held that a California sex offender law did not place the petitioner "in custody" even though California's law, which the petitioner maintained required in-person annual registration, was in some ways "more restrictive" than the Washington law challenged in *Williamson*. *Id.* at 1242. *Henry* concluded that "[r]egistration, even if it must be done in person at the police station, does not constitute the type of severe, immediate restraint on physical liberty necessary to render a petitioner 'in custody' for the purposes of federal habeas corpus relief." *Id.* (citing *Jones*, 371 U.S. at 242–43). *Henry* therefore determined that the district court lacked jurisdiction over the habeas petition. *Id.*

Similarly, in *McNab v. Kok*, 170 F.3d 1246 (9th Cir. 1999) (per curiam), we addressed Oregon's sex offender registration requirements. We concluded there that "because Oregon's sex offender registration requirements place no greater restraint on personal liberty than those of California and Washington, the Oregon law does not place [the petitioner] in custody within the meaning of section 2254(a)." *Id.* at 1247.

More recently, in *Maciel v. Cate*, 731 F.3d 928 (9th Cir. 2013), we evaluated a California law imposing "heightened . . . registration and tracking requirements" on sex offenders. *Id.* at 936. This law imposed on the petitioner "mandatory GPS monitoring for life" and "a lifetime ban on living within 2,000 feet of a school or park where children gather." *Id.* It also imposed related residency restrictions and monthly reporting requirements, while directing the "publication on a website of his crime, identity, appearance, any future address, and assessment for future dangerousness." *Id.* at 936–37 (internal citations omitted).

In *Maciel*, the petitioner argued that it violated *Hill v. Wampler*, 298 U.S. 460 (1936), to not include these conditions in his original criminal judgment. *Wampler* held that a petitioner was entitled to habeas relief when, after the district court pronounced its judgment, the clerk of court added a condition that the petitioner would remain imprisoned until he had paid a $5,000 fine. *Id.* at 461–62, 467. *Wampler* disapproved of the clerk's addition of a punitive condition because it had not been included in the district court's judgment. *Id.* at 465–67.

Applying the deferential standards of review in the Antiterrorism and Effective Death Penalty Act of 1996, we held in *Maciel* that "[e]ven assuming that *Wampler* extends to *non-custodial sentencing conditions*," the state court could reasonably conclude that *Wampler* does not encompass burdensome regulatory—rather than punitive—conditions. 731 F.3d at 935–37 (emphasis added). In other words, California's sex offender registration and tracking requirements, though burdensome, could be regarded as collateral consequences of conviction, not "custodial" requirements.

Like our court, other circuits have also considered a range of post-release conditions imposed on sex offenders in the context of deciding whether challenges to those conditions were cognizable in federal habeas. Other circuits have likewise held that these conditions did not place offenders "in custody" under § 2254. *See, e.g.*, *Calhoun v. Att'y Gen. of Colo.*, 745 F.3d 1070, 1074 (10th Cir. 2014) ("[W]e join the circuits uniformly holding that the requirement to register under state sex-offender registration statutes does not satisfy § 2254's condition that the petitioner be 'in custody' . . . ."); *Wilson v. Flaherty*, 689 F.3d 332, 337–38 (4th Cir. 2012) (holding that a petitioner

challenging Virginia's sex offender law was not "'in custody' so as to satisfy the jurisdictional requirement for a federal habeas case" and noting that "every court of appeals to have considered whether the registration requirements imposed on sex offenders place the sex offender in custody for purposes of habeas jurisdiction has concluded that they do not"); *Virsnieks v. Smith*, 521 F.3d 707, 718–20 (7th Cir. 2008) (holding that Wisconsin's sex offender law "imposes minimal restrictions on a registrant's physical liberty of movement" and noting that "courts ha[d] rejected uniformly the argument that a challenge to a sentence of registration under a sexual offender statute is cognizable in habeas"); *Leslie v. Randle*, 296 F.3d 518, 521–23 (6th Cir. 2002) (analogizing Ohio's sex offender law to the Washington law challenged in *Williamson* and holding that Ohio's requirements were "more analogous to collateral consequences such as the loss of the right to vote than to severe restraints on freedom of movement such as parole").

The Third Circuit has permitted habeas challenges to a Pennsylvania sex offender registration law. *See Piasecki v. Ct. of Common Pleas, Bucks Cnty., Pa.*, 917 F.3d 161, 170 (3d Cir. 2019). But in so holding, it applied an approach similar to *Williamson* and its progeny, except in the context of a state law that imposed very different requirements.

*Piasecki* involved much more burdensome conditions than those addressed in our prior cases. The petitioner was "required to register in-person with the State Police every three months for the rest of his life," and was required to "appear, in-person, at a registration site" any time he wanted to leave home for more than seven days, travel internationally, change his residence, change his employment, matriculate or end enrollment as a student, add or change a phone number, change ownership of a car, or

add or change any email address or online designation, among other things.  *Id.* at 164–65, 170.  The petitioner was also permitted no "computer internet use."  *Id.* at 170.

The Third Circuit concluded that the combined effect of these conditions was sufficiently severe to amount to custody.  *Id.* at 171 (holding that the "restraints compelled Piasecki's physical presence at a specific location and severely conditioned his freedom of movement").  *Piasecki*'s analysis was consistent with our own precedent, but simply confronted far more severe restrictions than those we have addressed in our past cases.  *See id.* at 172 (explaining that Pennsylvania's law was more "onerous" than those addressed in other cases).

## B

We turn now to the specific conditions Nevada has imposed on Munoz and ask whether they are sufficiently "severe" and "immediate" to make Munoz's supervision a "genuine restraint on liberty."  *Henry*, 164 F.3d at 1242; *Williamson*, 151 F.3d at 1183.  This issue is not resolved, as Munoz implies, by the "lifetime" nature of the conditions or the fact that they are supervisory (i.e., continuing in nature).  *Henry*, for example, involved "lifetime" requirements as well.  164 F.3d at 1242.  But *Henry*, like our other cases, focused not on the duration of the restrictions per se but on their nature and quality, in terms of whether they amounted to a significant, severe, and immediate restraint on physical liberty.  *McNab*, 170 F.3d at 1247; *Henry*, 164 F.3d at 1242; *Williamson*, 151 F.3d at 1183–84.  Within the framework our precedents set forth, we conclude that individually and collectively, Munoz's lifetime conditions of supervision do not rise to that level.

*First*, the requirement that Munoz pay a $30 monthly fee, Nev. Rev. Stat. § 213.1243(5)(c), does not render him "in custody."     "We have repeatedly recognized that the imposition of a fine, by itself, is not sufficient to meet § 2254's jurisdictional requirements."   *Bailey*, 599 F.3d at 979 (citing *Williamson*, 151 F.3d at 1183; *Dremann v. Francis*, 828 F.2d 6, 7 (9th Cir. 1987)).

Munoz's payment obligations were monthly, rather than one-time-only.  But the timing of his required payments does not transform them into a custodial requirement because like a fine, they do not impose a restraint on Munoz's physical liberty, much less the "significant restraint" that § 2254's "in custody" requirement demands.  *Id.*; *see also Kaminski v. United States*, 339 F.3d 84, 87 (2d Cir. 2003) (holding that a restitution order requiring monthly payments of ten percent of monthly income or $100 "plainly does not come close" to satisfying the "in custody" requirement).  Requiring Munoz to make a monthly payment thus "lack[s] the discernible impediment to movement that typically satisfies the 'in custody' requirement."  *Williamson*, 151 F.3d at 1184.

*Second*, we have little difficulty concluding that Munoz's electronic monitoring requirement, Nev. Rev. Stat. § 213.1243(5)(b), also does not cause him to be "in custody" under § 2254.  The electronic monitoring allows the State to track Munoz's whereabouts, but it does not limit his physical movement, nor does it require him to go anyplace.  As was true with the registration requirements we considered in *Williamson*, Nevada's electronic monitoring of Munoz "neither target's [petitioner's] movement in order to impose special requirements, nor does it demand his physical presence at any time or place."  151 F.3d at 1184.  It also does not "prevent[] him from going" anywhere, either.  *Id.*

To the extent electronic monitoring "create[s] some kind of subjective chill" on where Munoz may choose to go, that is insufficient under *Williamson*. *Id.*; *see also Belleau v. Wall*, 811 F.3d 929, 941 (7th Cir. 2016) (Flaum, J., concurring in the judgment) (explaining that electronic monitoring "does not infringe on [the offender's] freedom of movement" because he "may go where he pleases, when he pleases"); *Maciel*, 731 F.3d at 935 (including 24-hour electronic monitoring among conditions that could be described as "non-custodial"); *Doe v. Bredesen*, 507 F.3d 998, 1000, 1005 (6th Cir. 2007) (holding that a sex offender statute that required the offender to "wear a [GPS] device at all times" did "not constitute an affirmative disability or restraint").

*Third*, and finally, Munoz is not "in custody" due to his residency approval and reporting obligations. As a reminder, Munoz may only reside at a location if "the residence has been approved by the parole and probation officer" assigned to Munoz. Nev. Rev. Stat. § 213.1243(3)(a). If "the residence is a facility that houses more than three persons who have been released from prison," the facility must be "a facility for transitional living for released offenders that is licensed" under Nevada law. *Id.* § 213.1243(3)(b). And Munoz must also "keep[] the parole and probation officer informed" of his current address. *Id.* § 213.1243(3)(c).

The last of these requirements we can dispense with easily: requiring Munoz to update his parole officer with his current address does not restrict his movement in any apparent way. *See Williamson*, 151 F.3d at 1184. Munoz represents that he is required to appear in person "every few months" to register. The laws we considered in *Williamson* and *Henry* also involved requirements that the offender

verify his address with the State, and in *Henry* registration was in-person. *See Henry*, 164 F.3d at 1242; *Williamson*, 151 F.3d at 1183–84. Munoz provides no basis for treating his reporting obligations any differently.

Requiring Munoz to obtain approval for where he lives involves greater potential for a restraint on Munoz's physical liberty. But Munoz cites no authority to support the proposition that a residency approval requirement, without more, renders him "in custody." It is not apparent that the residency approval requirement has actually restricted where Munoz may reside. Nor does Munoz contend, for example, that any parole or probation officer has unreasonably withheld approval, or that that this requirement has been applied in a way that unduly limits his ability to live at a location of his choosing. Almost by definition, this requirement does not require him to live or be anywhere, either. *See Williamson*, 151 F.3d at 1180 (noting that Washington's sex registration law did not "demand [petitioner's] physical presence at any time or place").

Thus, regardless of whether a residency approval requirement could in some particularly inhibiting circumstances create a severe or significant restraint on an offender's physical liberty, *McNab*, 170 F.3d at 1247; *Henry*, 164 F.3d at 1242; *Williamson*, 151 F.3d at 1183–84, Munoz has not shown that his residency approval condition is a "custodial" one under § 2254. *See also Hautzenroeder v. Dewine*, 887 F.3d 737, 742–43 (6th Cir. 2018) (holding that Ohio's residency restrictions for sex offenders did not create conditions of "custody" under § 2254).[1]

---

[1] For the same reasons, Munoz has not shown he is in "custody" based on the requirement that, if he lives with more than three persons

Because it is sufficient to conclude under *Williamson*'s first factor that Munoz's conditions of lifetime supervision are not a severe, immediate restraint on his physical liberty, we need not resolve whether the conditions are regulatory or punitive under *Williamson*'s second factor. *See Henry*, 164 F.3d at 1242 (applying *Williamson* and holding that California's sex offender law did not place petitioner "in custody" without addressing whether the law was punitive or regulatory). On this record, Munoz has not demonstrated that the three conditions that make up his lifetime supervision are "custodial" within the meaning of § 2254. The district court therefore lacked jurisdiction over Munoz's habeas petition.

\*        \*        \*

On remand, the district court may determine whether to allow Munoz, upon a proper showing, leave to file an amended habeas petition that could secure jurisdiction under § 2254. In addition, or alternatively, the district court may consider whether it would be appropriate to "construe [Munoz's] petition for habeas corpus to plead a cause of action under § 1983 after notifying and obtaining informed consent" from Munoz. *Nettles*, 830 F.3d at 936.

**VACATED and REMANDED.**

---

who have been released from prison, the facility be a transitional living facility licensed under Nevada law. Nev. Rev. Stat. § 213.1243(3).